1  SHARTSIS FRIESE LLP
   ARTHUR J. SHARTSIS (Bar #51549)
2  MARY JO SHARTSIS (Bar #55194)
   ROBERT E. SCHABERG (Bar #81430)
3  SIMONE M. KATZ-O'NEILL (Bar #246490)
   One Maritime Plaza, Eighteenth Floor
4  San Francisco, CA 94111
   Telephone: (415) 421-6500
5  Facsimile: (415) 421-2922
   Email: ashartsis@sflaw.com, mjshartsis@sflaw.com,
6         rschaberg@sflaw.com, skatz@sflaw.com

7  Attorneys for Plaintiffs
   SKYRIVER TECHNOLOGY SOLUTIONS, LLC and          **ORIGINAL**
8  INNOVATIVE INTERFACES, INC.

9

                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                        C V   10   3305
12
   SKYRIVER TECHNOLOGY                    Case No.
13 SOLUTIONS, LLC, a California limited
   liability company, and INNOVATIVE      **COMPLAINT FOR FEDERAL AND**
14 INTERFACES, INC., a California          **STATE ANTITRUST VIOLATIONS;**
   corporation,                           **UNFAIR COMPETITION**
15
              Plaintiff,                   **JURY TRIAL DEMANDED**
16
   v.
17
   OCLC ONLINE COMPUTER LIBRARY
18 CENTER, INC., an Ohio corporation,

19            Defendant.

20

21     Plaintiffs SkyRiver Technology Solutions, LLC and Innovative Interfaces, Inc. allege

22 against defendant OCLC Online Computer Library Center, Inc. as follows:

23                            **INTRODUCTION**

24     1.     Defendant OCLC Online Computer Center, Inc. ("OCLC"), a nonprofit

25 corporation operating as a purported member-based cooperative of libraries in the United States

26 and throughout the world, is unlawfully monopolizing the bibliographic data, cataloging service

27 and interlibrary lending markets and is attempting to monopolize the market for integrated library

28 systems by anticompetitive and exclusionary agreements, policies and practices.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

2. OCLC uses its monopoly power in its dealings with the library industry to preclude entry of competitors into the product markets in which it maintains its monopolies and is also using its monopoly power to establish a further monopoly in another product market.

3. Defendant OCLC requires its member libraries to contribute all of the bibliographic records of their holdings to OCLC's comprehensive bibliographic database, to purchase OCLC's commercial products and services and to assist in the development of new products and services through pilot programs. OCLC prohibits its member libraries from transferring or sharing their own records—which they contributed to OCLC's bibliographic database—for any commercial purpose and denies access to its massive database to commercial firms for any commercial use, other than to provide services to libraries that OCLC approves.

4. Although purporting to be a nonprofit cooperative, OCLC's corporate equity in 2004 was \$138 million. OCLC generated revenues in excess of \$200 million annually from 2005 through 2008, generated tax-free profits averaging over \$17 million per year and amassed a securities portfolio valued as high as \$176 million in 2007. By 2008, OCLC had corporate equity in excess of \$211 million. While claiming to have a charitable purpose, only a small fraction of OCLC's revenue comes from contributions, grants or membership fees. OCLC's tax-free profits over the past eighteen years have been used to acquire numerous for-profit and nonprofit companies in order to extend and preserve its monopolies in its bibliographic database, cataloging and interlibrary lending, and to extend its monopolies to other library products and services.

5. This case is about defendant OCLC's exclusionary agreements, punitive pricing, unlawful tying arrangements and its refusal to deal with for-profit firms in violation of the antitrust laws in order to maintain its monopolies and to destroy a new entrant in the market for library cataloging services in competition with OCLC. This case is also about defendant OCLC's entry into the integrated library systems market and its use of its monopoly power over its bibliographic database, cataloging service and worldwide interlibrary lending service to attempt to monopolize the integrated library systems market through unlawful, anticompetitive conduct and anticompetitive agreements that it imposes on its member libraries and its refusal to allow for-profit firms to access its database for commercial purposes.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 2 -

COMPLAINT FOR FEDERAL AND STATE
ANTITRUST VIOLATIONS; UNFAIR COMPETITION

1    6.      Plaintiffs have been injured and competition in the relevant markets has been

2    harmed by OCLC's exclusionary and anticompetitive agreements and conduct. This action is

3    brought to obtain relief for the injuries suffered by plaintiffs, including access to OCLC's

4    unlawfully acquired database, and for the benefit of all libraries, their patrons and consumers by

5    assuring that competition exists in all aspects of electronic bibliographic data compilation and

6    library systems and services.

7                              **THE PARTIES**

8    7.      Plaintiff SkyRiver Solutions, LLC ("SkyRiver") is a California limited liability

9    company with its principal place of business in Alameda County, California. SkyRiver entered

10   the library cataloging service market in the fall of 2009 in the United States.

11   8.      Plaintiff Innovative Interfaces, Inc. ("Innovative") is a California corporation

12   founded in 1978 with its principal place of business in Alameda County, California. Innovative

13   provides computer systems to libraries in the United States and other countries.

14   9.      Defendant OCLC is a nonprofit Ohio corporation formed in 1967 and

15   headquartered in Dublin, Ohio. OCLC purportedly operates as a membership cooperative. Its

16   stated mission is "furthering access to the world's information and reducing library costs."

17   OCLC sells access to its bibliographic database through various services, including cataloging

18   and interlibrary lending, to academic and research libraries, and other libraries, in the United

19   States and other countries.

20                          **JURISDICTION AND VENUE**

21   10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1337 and 28 U.S.C.

22   § 1331, as this action arises under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and

23   Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26. This Court has supplemental

24   subject matter jurisdiction of the pendent state law claims under 28 U.S.C. § 1367(a).

25   11.      Venue is proper in this judicial district under 15 U.S.C. § 22 as OCLC is found

26   and transacts business in this district, many of the acts and omissions that give rise to the claims

27   in this action occurred in this district, and the damages were suffered by plaintiffs in this district.

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 3 -

Case No.                    COMPLAINT FOR FEDERAL AND STATE
                            ANTITRUST VIOLATIONS; UNFAIR COMPETITION

**INTRADISTRICT ASSIGNMENT**

12. This action is appropriate for assignment to the Oakland Division or San Francisco Division of this Court as plaintiffs do business in both counties and are headquartered in Alameda County, and OCLC is found and does business in both Alameda County and San Francisco County.

**BACKGROUND**

13. Since 1971, OCLC has used its nonprofit, tax-free status and stated charitable mission to induce libraries throughout the United States and many foreign countries to become members of a purported cooperative by contributing to a single database controlled by OCLC the bibliographic metadata (or records) describing their library holdings. In its digital electronic form, this metadata consists of the information traditionally found in a library's card catalog. OCLC has thus compiled a bibliographic database comprising the library holdings of more than 72,000 libraries in 171 countries. This bibliographic database is known as "WorldCat." None of the metadata in WorldCat constitutes an original work, proprietary or trade secret information of OCLC. This metadata is in the public domain or is created almost entirely by individual OCLC member libraries, not OCLC.

14. The WorldCat bibliographic database is considered by OCLC and libraries throughout the United States and worldwide to be "the world's most comprehensive bibliographic database." It is also the only comprehensive bibliographic database of the holdings of libraries in the United States. OCLC boasts over 139 million bibliographic records and total holdings (including digital items, e-books, works and languages) of over 1.4 billion as of June 30, 2009. OCLC describes this massive database as "a unique store of information [that] encompasses records in eight formats—books, serials, sound recordings, musical scores, maps, visual materials, mixed materials and computer files." Because OCLC members contribute their new bibliographic records to WorldCat and encourage other libraries to become members, OCLC's bibliographic database will continue to grow. OCLC reported that in 2009 "WorldCat grew by 30.9 million records" and libraries "used WorldCat to catalog and set holdings for 273.8 million items and arrange 10.3 million interlibrary loan transactions."

1      15.    Membership in the OCLC "cooperative" obligates each library not only to
2   contribute the metadata representing its holdings to the WorldCat database, but also to purchase
3   one or more of OCLC's principal services or products, such as cataloging service, its national and
4   worldwide interlibrary lending service ("ILL") and/or other OCLC designated products and
5   services. Membership also obligates libraries to assist OCLC in developing new products and
6   services to compete with for-profit firms. With the exception of a public website, WorldCat.org,
7   that gives public access to a limited view of WorldCat's bibliographic records, OCLC allows only
8   member libraries or other authorized users to access its full WorldCat database to catalog library
9   materials as well as to locate and borrow library materials from other member libraries. Plaintiffs
10  are informed and believe and based thereon allege that OCLC is not a true cooperative in that its
11  members do not share its revenues or control its management, operations or policies. A majority
12  of its Board of Trustees is elected by the Board itself. As such, there is no prospect of economic
13  unity between and among OCLC and its member libraries, and there is a distinct diversity of
14  economic interests between them. Rather than operating with transparency as a cooperative
15  would be expected to do, OCLC charges different prices to its members for the same services and
16  conceals those differences from its members.

17      16.    Typically, when a new acquisition is cataloged by a library that purchases OCLC's
18  cataloging service, a holdings symbol or code identifying the owning library is automatically
19  attached to the bibliographic record representing that item in the WorldCat database. If an item is
20  not cataloged using OCLC's cataloging service, OCLC supports an established service of batch
21  loading the library's holdings information into the WorldCat database for a per-record fee. Each
22  member library's ownership symbol and "holdings information" is stored and displayed in
23  WorldCat. Member libraries receive various "credits" for contributing their holdings to WorldCat
24  as determined by OCLC on an unpublished, library-by-library basis, which can be used as an
25  offset against certain OCLC fees. OCLC places its own OCLC number on each library record
26  uploaded into WorldCat, which also appears on the library's computerized records of its own
27  holdings. This OCLC number has permitted OCLC to police its members to ensure that their
28  records are not shared with unauthorized users. OCLC also instructs its members to use this

- 5 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

number as the criterion for defining "WorldCat data," which must be restricted from access by unauthorized users, including for-profit firms.

17. SkyRiver is a new entrant in the cataloging service market. SkyRiver has developed a smaller bibliographic database than OCLC and offers cataloging services to academic and research libraries throughout the United States in competition with OCLC. Until SkyRiver entered the market, OCLC had virtually no competitors in the market for cataloging service. OCLC acquired its last remaining competitor in 2006.

18. In 2008 OCLC introduced a new product called WorldCat Local to replace locally installed online library catalogs. In 2009 OCLC introduced WorldCat Local "quick start," which it describes as "the first step toward web-scale cooperative library management services." These new products are designed and intended to establish an integrated library system, which typically includes all of the "backroom" functions of a library, including managing new library acquisitions, local administration of cataloging, circulation, delivery of library inventory and resource sharing among groups of libraries. This type of computer system for libraries is commonly referred to as an integrated library system or "ILS." In 2009, OCLC also introduced WorldCat Navigator to provide resource sharing among groups of libraries. OCLC is rapidly gaining market share in the ILS market by leveraging its monopoly power over its bibliographic database, cataloging and ILL and other anticompetitive conduct to disadvantage and eliminate its competitors.

19. Innovative provides integrated library systems through three principal products known as Millennium, Encore and INN-Reach. Millennium provides libraries with an array of ILS services to maintain a library. Encore gives a library and its patrons a public interface to search and integrate much more web-based information than just the library's local holdings. INN-Reach is a consortial borrowing system that directly links multiple library systems in a defined geographic area into a single real-time "union" catalog (*i.e.*, a combined library catalog describing the collections of the libraries in the consortium) that provides resource sharing among libraries. Innovative has numerous competitors in all markets in which it participates.

1

**THE RELEVANT MARKET**

2      20.     There are three separate product or service markets at issue in the claims asserted
3  in this case by SkyRiver. The first is the market for bibliographic data comprised of digital
4  electronic metadata (*i.e.*, records) of the holdings of college, university and research libraries
5  (collectively "libraries" or "academic libraries"). The second is the market for cataloging the
6  bibliographic records of the holdings and new acquisitions of academic libraries. The third is the
7  market for interlibrary lending between and among academic libraries to share each other's
8  resources. Plaintiffs are informed and believe and on that basis allege that OCLC's share of each
9  of these markets for academic libraries in the United States is greater than 90 percent. Although
10  complementary, these three products or services are sold separately. A library can obtain access
11  to the bibliographic database by purchasing a product or service that provides access. Cataloging
12  and ILL services are functionally dependent on the database. In other words, a cataloging service
13  and an ILL service cannot effectively operate without constant access to the bibliographic
14  database since the information and data accessed and delivered by each of the cataloging and ILL
15  services is derived exclusively from the information and data contained in the bibliographic
16  database.

17      21.     OCLC possesses, maintains and exercises monopoly power over the WorldCat
18  database, cataloging services and inter-library lending services and has acquired and absorbed or
19  eliminated all of its previously existing competitors in each of these markets. With the exception
20  of SkyRiver, a new market entrant for cataloging services, there are no existing products or
21  services that are reasonably interchangeable with, or available substitutes for, any of these three
22  products or services. As such, OCLC has no competitors who reasonably possess the actual or
23  potential ability to deprive OCLC of any significant amount of its monopoly market share of any
24  one of these three products or services.

25      22.     The unique mission and purpose of academic libraries mandates that these libraries
26  have continuous access to a vast array of library holdings that are capable of satisfying the
27  scholarly research needs of their individual library communities. Since OCLC is the only
28  provider of a worldwide database and a national and worldwide inter-library lending service that

- 7 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    is commercially available and reasonably capable of meeting the research needs of these libraries,

2    these libraries are necessarily captive customers of OCLC for its ILL. As a practical matter, these

3    libraries have been compelled to subscribe to OCLC cataloging and ILL services given the

4    absence of any reasonably available competitive products or services because these libraries

5    would otherwise be unable to accomplish their unique mission of providing their individual

6    library communities with access to a full range of scholarly materials. Not until the emergence

7    and entry of SkyRiver with a cataloging service utilizing a smaller bibliographic database have

8    these libraries had a choice of a competitive cataloging service. However, SkyRiver has only a

9    de minimus share of the market for cataloging services as a direct result of OCLC's anti-

10   competitive conduct and exercise of its monopoly power as described more fully below. These

11   libraries have no choice other than OCLC for ILL as there is no database comparable to

12   WorldCat.

13       23.     To the extent there are other discrete or selective bibliographic databases available,

14   none is a substitute or an alternative to WorldCat because academic libraries require access to a

15   single electronic means of deriving the metadata that has the necessary interfaces to provide full

16   integration of the various library's holdings and provide for borrowing or lending to other

17   libraries throughout the United States and worldwide. For example, while WorldCat.org provides

18   public access to limited bibliographic metadata, it has no technical interface to, or integration

19   with an individual library's system to allow meaningful use of the data for cataloging or

20   interlibrary lending.

21       24.     No other bibliographic database duplicates or is an effective substitute for OCLC's

22   WorldCat database because its member libraries have been prohibited from sharing the

23   bibliographic data of their respective holdings to any commercial firm or for any commercial use.

24   Similarly, and for the same reasons, there is no duplicate interlibrary lending service or any

25   effective substitute for OCLC's ILL service because access to the WorldCat database is essential

26   to a competitive ILL service. In addition, regional resource sharing or interlibrary lending among

27   libraries in a specific geographical area is not a substitute or alternative for OCLC's ILL service,

28   which facilitates borrowing and lending of library materials nationally and worldwide. Those

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1 libraries that participate in regional interlibrary lending through their ILS providers nonetheless
2 require and therefore purchase ILL services from OCLC.

3     25.     OCLC has illegally acquired and is maintaining a monopoly in each of these three
4 markets by the anticompetitive conduct alleged below, including prohibiting member libraries
5 from sharing their holdings with commercial firms, coercing its members to purchase OCLC's
6 cataloging service by threats and punitive pricing of its ILL service for those who do not purchase
7 its cataloging service.

8     26.     There are high barriers to entry into the bibliographic data, cataloging and
9 interlibrary lending markets. Over a period of almost 40 years with a tax-free subsidy and at
10 great expense to each of its participating member libraries, OCLC has compiled its "unique"
11 database, which cannot reasonably or practicably be duplicated and which has resulted in
12 entrenched buyer preference. OCLC is maintaining a monopoly in each of these markets by
13 (a) exclusive and exclusionary agreements, rules and terms of use with libraries as a condition of
14 membership, (b) requiring or coercing its member libraries to use its cataloging service in order to
15 have access to its massive database and the holdings of other member libraries, (c) using its
16 monopoly power in one product or service market to coerce libraries not to deal with competitors
17 in another product or service market, (d) using tax-free profits to acquire competitors, and
18 (e) denying commercial access to its database, which is essential to effective and efficient
19 competition, by refusing to deal with for-profit firms.

20     27.     The relevant product or service market at issue in the claims asserted by
21 Innovative is integrated library systems (ILS), which provide fully integrated back-office
22 functionality (the operations of a library), an integrated public view catalog for finding the books
23 and other materials that libraries hold and interlibrary lending on a regional basis for consortia of
24 libraries located in defined geographic areas. While there are numerous competitors in the ILS
25 market, OCLC has been gaining market share at a rapid rate since it entered this market in
26 2008-2009 by means of its anticompetitive conduct.

27     28.     OCLC is using its monopoly power over its WorldCat database, cataloging service
28 and ILL service in an attempt to monopolize the market for integrated library systems. There is a

- 9 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    dangerous probability that OCLC will actually obtain an illegal monopoly in the ILS market

2    because private vendors such as Innovative do not have access to the WorldCat database, and

3    OCLC's ILS products are centered on providing direct, integrated access to its WorldCat

4    database, its cataloging service and its interlibrary lending service in a bundled mode while

5    denying such access to for-profit firms.

6         29.    OCLC has the market power to dictate the terms and conditions of its

7    anticompetitive tying or bundling arrangements, the market power to intimidate and coerce its

8    members to participate in unlawful refusals to deal, the market power to intimidate and coerce its

9    members not to switch to SkyRiver's cataloging service, and the market power to leverage its

10    database, cataloging and interlibrary lending monopolies so that OCLC can expand its monopoly

11    power into the integrated library systems market. OCLC's three monopolies—bibliographic data,

12    cataloging and ILL—are mutually reinforcing and give OCLC an arsenal of tools to punish

13    customers and harm competition.

14         30.    The relevant geographic market for each of the four product markets at issue—

15    bibliographic data, cataloging service, inter-library lending and integrated library systems—is the

16    United States, because academic libraries cannot turn to suppliers of these products in other

17    countries to meet their needs.

## OCLC'S ANTICOMPETITIVE CONDUCT

19         31.    As described below, OCLC has obtained and is using its monopoly power over its

20    bibliographic database, cataloging and ILL services by anticompetitive exclusive and

21    exclusionary agreements and by conduct designed to eliminate all competition in the library

22    bibliographic data, cataloging and ILL markets. OCLC is also using its monopoly power and its

23    tax exempt status as leverage in its attempt to extend its monopolies to include the ILS market in

24    the United States in violation of federal and state antitrust laws.

### Acquisition And Maintenance Of OCLC's Monopoly Over Bibliographic Metadata

26         32.    To be a member in the OCLC cooperative and have access to the full WorldCat

27    database and ILL, libraries must agree to purchase OCLC's designated services, contribute to the

28    co-development of OCLC products or services and abide by exclusionary policies and practices.

- 10 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

33. In order to maintain strict control over its members' access and use of the WorldCat database, OCLC publishes and enforces its "Principles of Cooperation" and "Guidelines for Contributions to WorldCat" (collectively, "Principles and Guidelines"). OCLC has also published and enforced "Guidelines for the Use and Transfer of OCLC-Derived Records" ("Use and Transfer Guidelines"). These Principles and Guidelines and Use and Transfer Guidelines—which each member agrees to accept, follow and enforce—have been in effect for many years and have been central to OCLC's establishment of each of its monopolies.

34. OCLC's Principles and Guidelines not only require member libraries to contribute to OCLC all current bibliographic and holdings information which represents cataloged items in their collections, but in addition member libraries are required to: create bibliographic records and related data consistent with the "guidelines" adopted by OCLC; support and promote shared use of records among members; limit use of OCLC records, systems and services to OCLC authorized users; promote the responsible use of OCLC-derived records only by approved users; and ensure that the resources of the cooperative are used only to the benefit of the cooperative. In fact, these requirements are designed to protect OCLC's control over the WorldCat database. OCLC warns its members that newer technologies allow a library's records to be copied from its online catalog without the library's agreement and that such use puts member libraries' "investment" in WorldCat "at risk."

35. To ensure that bibliographic records in the WorldCat database are not shared with any potential competitors of OCLC, member libraries have been required to agree to comply with OCLC's Use and Transfer Guidelines, which were formally promulgated by OCLC in 1987. While each member library may transfer records of its own holdings without restriction to other libraries, a member library may not transfer or share records of its own holdings with commercial firms. A "commercial firm" is defined as any organization permitted, under applicable law, to operate on a for-profit basis. The only exception to this prohibition is when a library has employed and agreed to pay a commercial firm to process its records (a service that OCLC did not provide until 2008) on the condition that the commercial firm has signed an individual agreement with the library or signed a general agreement with OCLC for protection of the records

- 11 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    it has been employed to process. These guidelines apply to all uses and transfers of a library's

2    records except where a mutually acceptable agreement establishing broader or narrower rights is

3    made with OCLC relating to a specific product or service.

4        36.    Restricting access to OCLC's bibliographic database expands and maintains

5    OCLC's monopolies. These Use and Transfer Guidelines are specifically intended to preclude

6    any entity that attempts to compete with OCLC from obtaining access to the bibliographic

7    metadata contained in the WorldCat database and to prevent competitors from having access to

8    the bibliographic metadata of all OCLC participating libraries. These policies are inconsistent

9    with OCLC's stated mission of "furthering access to the world's information" because OCLC's

10   purpose and intent is to control, not expand, access to information. Although OCLC updated the

11   language of these Use and Transfer Guidelines effective August 1, 2010, the same policies and

12   restrictions continue in effect.

13       37.    To minimize the risk of a competitor or non-member accessing the WorldCat

14   database, OCLC agrees with its members to monitor and detect "unapproved use of WorldCat

15   records" and to have its designated regional service providers monitor and detect such

16   unapproved use. To further minimize the risk of unapproved use, member libraries are required,

17   and agree, to use reasonable efforts to detect such use "by using filters and other technologies

18   supplied by OCLC," and to deny non-member libraries the ability to use OCLC-derived records

19   (*i.e.*, bibliographic records obtained from the WorldCat database) for cataloging purposes unless

20   OCLC has agreed to such use. The term "record" is defined to include all bibliographic records

21   and holdings data derived from the OCLC database, which includes each member's own records.

22   OCLC's Principles and Guidelines prohibiting member libraries from sharing their own records

23   of their own holdings are designed and intended to maintain and expand OCLC's monopoly over

24   the WorldCat database and all related library services.

25       **Acquisition And Maintenance Of OCLC's Monopoly Over Cataloging Services**

26       38.    OCLC's monopoly power over the WorldCat database is used as leverage to force

27   member libraries to purchase OCLC's cataloging service. Allowing for-profit competitors to

28   obtain the libraries' holdings or to access the WorldCat database would contribute to innovation

- 12 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    and technological advancement and allow those competitors to create more competitive databases
2    and lower fee-based products and services that would benefit both the libraries and ultimately
3    their patrons—the ultimate consumer of library materials. This innovation would also further
4    OCLC's stated mission of reducing library costs.

5        39.    All other bibliographic databases that once offered cataloging services to academic
6    libraries in competition with OCLC have been eliminated or acquired by OCLC using its tax-free
7    profits. Washington Library Network ("WLN") was acquired by OCLC in 1999. In 2006, OCLC
8    acquired the Research Libraries Group, Inc. ("RLG"), the single remaining competitor in the U.S.
9    for bibliographic data, cataloging and ILL services for academic libraries, and OCLC now has
10   monopoly control with approximately 90 percent of this market. In fact, library commentators
11   use the word "monopoly" to describe OCLC and acknowledge that it is "the only game in town"
12   for cataloging because there is no place to go "for this type of service" since OCLC "gobbled up
13   RLG." OCLC's restrictions on access to the WorldCat database and to the records of its member
14   libraries' holdings are a substantial barrier to entry in the market for cataloging services.

15       40.    Many libraries are interested in using SkyRiver's competing cataloging service
16   because it provides a high quality service at a substantially lower cost than OCLC's cataloging
17   service. OCLC is using anti-competitive means, including tying its cataloging service to its ILL
18   service, to force and intimidate members to use its cataloging service by punitive pricing or
19   selective price concessions with the intent to eliminate SkyRiver as a competitor for cataloging
20   services and to signal other potential competitors in the market for cataloging service that OCLC
21   will act to protect its monopoly.

22       **Acquisition And Maintenance Of OCLC's Monopoly Over Interlibrary Lending**

23       41.    OCLC uses its bibliographic database monopoly and its cataloging service
24   monopoly as the foundation for its interlibrary lending (ILL) monopoly. Known as WorldCat
25   Resource Sharing, OCLC's ILL service is offered for a significant annual fee to member libraries.
26   OCLC's ILL service is the largest and the only worldwide interlibrary lending service in the
27   world. The scope of OCLC's ILL service is coterminous with OCLC's bibliographic database
28   because the data inventory exchanged through ILL must first reside in a single database—the

- 13 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

WorldCat database. For an ILL participant to lend its holdings (and receive credits from OCLC when its holdings are borrowed), those holdings must be loaded onto WorldCat. Because libraries continue to acquire holdings, the ILL participant must also be able to upload recent acquisitions to continue to be a full participant in ILL. OCLC's ILL service is *de facto* sold to member libraries tied together with OCLC's cataloging service.

42.     Plaintiffs are informed and believe and based thereon allege that OCLC had a practice of allowing its member libraries that subscribed to the competing RLG cataloging service prior to its acquisition by OCLC to batch load their acquisitions to WorldCat for a modest per-record fee of approximately $0.23 so that those materials would be available for interlibrary lending among other academic libraries.

43.     In reaction to SkyRiver's entry into the market for cataloging services in October 2009, OCLC used its monopoly power over ILL in an attempt to coerce its members to continue to subscribe to OCLC's cataloging service and not use SkyRiver's cataloging services. For example, Michigan State University ("MSU") library advised OCLC that it had decided to use the cataloging services of SkyRiver because of the significant cost savings it offered, but would continue to subscribe to ILL at the OCLC quoted annual fee of $88,500. Academic libraries, including MSU, heavily rely on OCLC's ILL service as there is no other comparable interlibrary lending service available due to OCLC's monopoly over the WorldCat database and its exclusion of SkyRiver and other competitors from access to that database. MSU also intended to continue to contribute its new acquisitions to the OCLC database by uploading records to WorldCat at the published batch-load fee as subscribers to RLG's cataloging service had previously done and as many other libraries continue to do. By continuing to contribute its new acquisitions, MSU would be a full participant in the ILL, making available to all ILL participants its full holdings and qualifying it to receive "credits" from OCLC if its new acquisitions were borrowed by another library. Not only would potential borrowing libraries and their users benefit from access to MSU's holdings, MSU would maintain its stature as a fully reciprocal participant within the library community.

44.     To comply with OCLC's Principles of Cooperation, libraries contribute their new

- 14 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    acquisitions to the WorldCat database. Libraries that use OCLC's cataloging service are not

2    charged for uploading their new records. Plaintiffs are informed and believe and based thereon

3    allege that there are libraries that do not subscribe to OCLC's cataloging service and are charged

4    a standard uploading fee of $0.23 per record to upload their new acquisitions into the WorldCat

5    database.

6    45.    To continue to make its new acquisitions available to all other ILL subscribing

7    libraries, in December 2009 MSU requested a quotation from OCLC for batch-load fees

8    expecting the price to be similar to that made available to other libraries of $0.23 per record,

9    which would have amounted to approximately $6,000 in batch-load fees annually. OCLC

10    advised MSU in February 2010 that the fee to batch-load its records would be $54,000 for just a

11    five-month period ending June 30, 2010, evidencing its clear intent to force MSU to use OCLC's

12    cataloging service to avoid these fees. After application of MSU's credits, the OCLC effective

13    per record price for MSU was $2.85, or approximately twelve times the amount paid by other

14    libraries that batch load new records.    This oppressive and punitive price increase was

15    deliberately set at a level that would eliminate the cost savings that MSU could obtain by using

16    SkyRiver's cataloging service and thereby all but compel MSU to continue to use OCLC's

17    cataloging service. There is no efficiency or business justification for OCLC increasing its

18    uploading fees for batch loading new records. Rather, OCLC raised the batch uploading price to

19    a punitive level in an attempt to force MSU to continue to buy OCLC's cataloging services and to

20    send a signal to all libraries not to use SkyRiver's cataloging service.

21    46.    Because MSU, like many libraries, had to reduce its operating costs due to budget

22    cuts, it decided to use SkyRiver's lower cost cataloging service and to discontinue uploading any

23    new acquisitions to WorldCat. MSU advised all ILL subscribers of OCLC's quotation of an

24    OCLC batch loading charge twelve times higher than normal even though MSU was still paying

25    an annual fee of $88,500 for the ILL service. The director of libraries at MSU apologized in a

26    memorandum to ILL users, informing them of the reason it would not be contributing new

27    acquisitions to the WorldCat database:

28    We would welcome the opportunity to start loading MSU records and holdings

- 15 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1

into the OCLC database, as soon as a reasonable price structure can be proposed. Until that time, I apologize for any inconvenience caused to our ILL partners. MSU sincerely wishes to contribute its SkyRiver records to the OCLC database for utilization by other libraries and in support of ILL activities, but the suggested cost structure is prohibiting this from occurring, to the detriment of every OCLC member.

2

3

4

5

6

7

8

* * *

Recent history has seen computer companies attempt to coerce users into adopting their entire product line by producing merchandise that will not accommodate alternative inputs. I would like to think that a not-for-profit member driven organization [OCLC] would not attempt to employ such tactics, whether via product design or pricing structures.

9        47.     OCLC's attempted coercion resulted in all ILL users being deprived of access to

10   MSU's new acquisitions, and in the inability of MSU to receive credits to off-set some of its own

11   borrowing costs by lending to other libraries. OCLC's price gouging is inconsistent with its

12   stated charitable mission of "reducing library costs," and the resulting loss of records from

13   MSU's new acquisitions is inconsistent with its mission of "furthering access to the world's

14   information."

15       48.     The library community is well aware of OCLC's punitive pricing, and one online

16   library news service commented on OCLC's treatment of MSU: "The real work here is done by

17   librarians, not OCLC. . . . Today, when libraries are starting to realize OCLC's core service isn't

18   worth what it was worth in 1967, OCLC is looking to permanently lock up their central position

19   with viral contracts and, as the MSU case makes clear, monopoly pricing and flat-out bullying."

20       49.     Similarly, in the middle of California's financial crisis, California State University

21   at Long Beach ("CSULB") library advised OCLC that it planned to switch to SkyRiver for

22   cataloging services to reduce its costs but would continue to subscribe to the ILL service. It

23   requested confirmation of a $0.23 per record batch-load fee to upload its new records to the

24   OCLC WorldCat database. Like MSU, CSULB subscribes to OCLC's ILL service at a cost of

25   approximately $75,000 annually because there is no other interlibrary lending service available

26   due to OCLC's monopoly over the WorldCat database. While awaiting OCLC's response, in

27   February 2010 CSULB's library director in a memorandum to all ILL subscribers explained to

28   member libraries and ILL partners that "if . . . the cost of contributing a record to the OCLC

Case No.                    COMPLAINT FOR FEDERAL AND STATE
                            ANTITRUST VIOLATIONS; UNFAIR COMPETITION

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   union catalog is being increased twelvefold and that this charge appears to be imposed selectively

2   and punitively, we will not contribute current and future records to the database."

3       50.    The same coercive effective charge of $2.85 per record was quoted by OCLC, and

4   CSULB discontinued contributing its new acquisitions to the OCLC database. As a result,

5   CSULB does not upload new records and other libraries do not have the benefit of CSULB's new

6   records for borrowing, and CSULB does not have the benefit of reducing its ILL fees through

7   lending its new holdings to other libraries. Again, OCLC's actions are inconsistent with both

8   aspects of OCLC's stated mission and are intended to prevent libraries from using the lower cost

9   cataloging service offered by SkyRiver in order to eliminate SkyRiver as a competitor.

10      51.    By attempting to coerce MSU and CSULB with "monopoly pricing and flat-out

11  bullying" not to use SkyRiver, OCLC has succeeded in intimidating other libraries from using

12  SkyRiver. Several other academic libraries in the United States have advised SkyRiver that they

13  would prefer to use SkyRiver's cataloging service for the substantial cost savings and quality of

14  the service. However, given OCLC's retaliation against MSU and CSULB for changing to

15  SkyRiver's service, they are afraid to use SkyRiver because they could not bear the twelvefold

16  increase in cost that OCLC would charge for uploading their new acquisitions for ILL use.

17  Because the ILL service is essential to those libraries considering SkyRiver, those libraries have

18  effectively been coerced to continue subscribing to OCLC's cataloging service to avoid the higher

19  cost of contributing their new records to the WorldCat database.

20      52.    Beyond the higher cost of uploading new holdings records, OCLC's

21  anticompetitive acts cause further serious harm to libraries. The inability to be a full participant

22  in OCLC's ILL service also precludes certain types of libraries from obtaining state and federal

23  grants and other aid or tax subsidy assistance. Many states identify one or more of its libraries as

24  its "library of last resort," meaning that that library has the broadest access to bibliographic

25  holdings over any other library in the state. State legislatures and other philanthropic institutions

26  scrutinize the library's access to bibliographic holdings before authorizing the funding that is

27  designed to help the library maintain its "library of last resort" status. However, maintenance of

28  this designation is typically wholly dependent upon the library's ability to have its new

- 17 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    acquisitions available through OCLC's ILL. The risk of not being a "library of last resort"
2    because of limited participation in OCLC's ILL has caused several libraries to inform SkyRiver
3    that they are economically prohibited from doing business with SkyRiver because it would
4    jeopardize their ability to obtain certain grants and other legislative subsidies. Thus, while OCLC
5    may not literally require libraries to buy OCLC's cataloging service in order to upload new
6    records into OCLC's ILL, its punitive pricing—and the threat of punitive pricing—constitutes
7    tying in all practical respects.

8         53.    In February 2010, after MSU and CSULB advised OCLC of their intent to switch
9    to SkyRiver but before they had actually received a response concerning the price for uploading
10   their new records, the Chair of the OCLC Board of Trustees wrote a letter to all OCLC member
11   libraries in which he advised them that "some alternative [cataloging] service providers [a
12   reference to SkyRiver] are offering OCLC members services that enable them to bypass the
13   WorldCat cataloging service and to find cataloging records at a reduced cost." He warned
14   member libraries that using such services "hold the potential to undo the work that libraries and
15   the OCLC cooperative have done together over these past 40 years." He urged member libraries
16   to read a speech (and enclosed a copy with his letter) that he gave on January 15, 2010 in which
17   he referred to "a lite cataloging service" [a reference to SkyRiver] and questioned whether
18   libraries that make the choice to use that cataloging service *"should have access to resource*
19   *sharing [ILL] and other value added activities that those who are full participants enjoy . . .*
20   *[a]nd if they do have access then at what price?"* MSU and CSULB and the rest of the library
21   community learned "at what price"—a punitive price—leaving open the question whether such
22   libraries should have access to OCLC's ILL service at all. OCLC's punitive price increase to
23   MSU and CSULB, and the threats made by OCLC's Chair, also signaled to other libraries that
24   they would suffer the same punitive uploading fees should they switch to SkyRiver's cataloging
25   service or be denied ILL service altogether. This intimidation is a cheap means of excluding
26   SkyRiver from the market because it costs OCLC nothing. OCLC's intentional intimidation and
27   bullying actions have resulted in injury to SkyRiver by the loss of potential cataloging contracts
28   with several academic libraries in the United States.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 18 -

1     54.    OCLC has adopted an additional strategy to break the momentum of libraries changing from OCLC to SkyRiver by giving dramatic price concessions on cataloging service where reducing OCLC's fees would not materially affect OCLC's profits. Plaintiffs are informed and believe and based thereon allege that one or more smaller libraries that have indicated an interest in switching their cataloging from OCLC to SkyRiver have not done so because OCLC has offered significant discounts for cataloging that are not available to other OCLC members, with the intent of eliminating SkyRiver as a competitor. OCLC is able to do this because it does not publish its prices for cataloging or ILL services and conceals differential prices for the same service from its members.

55.    OCLC's use of its monopoly power over ILL to coerce libraries who prefer to use SkyRiver's less expensive cataloging service has been recognized by many in the U.S. library community as anticompetitive and as an indication that OCLC is not interested in reducing libraries' costs but rather is interested in ensuring that it retains its monopolies over cataloging and ILL by means of its monopoly power over its member libraries' bibliographic records. A prominent library-related internet blog commented on OCLC's abuse of MSU and its impact on the library sector:

> I find it astonishing that any corporation would choose to punish customers rather than to work to win them back. I also find it astonishing that OCLC is willing to keep current customers through threats and fear. Essentially, MSU is being made an example: if you move your cataloging to a competitor, we'll cut you out of OCLC services. This is a lesson for anyone else thinking of moving to SkyRiver or some other service.

OCLC's treatment of MSU and CSULB and the "lesson" it teaches has coerced numerous libraries interested in moving to SkyRiver's cataloging service to stay with OCLC in order to avoid its punitive actions.

**OCLC's Bundled Products And Services And Its
Entry Into The Market For Integrated Library Systems**

56.    OCLC has traditionally offered three principal products, some or all of which must be purchased by a library to qualify for membership and access to the OCLC WorldCat database. They are FirstSearch, which is a bundle of various services and products, a cataloging service and

- 19 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    an ILL service. OCLC does not publicly disclose pricing for any of these products or services but

2    rather its price list states "Custom Quotes" for each. Plaintiffs are informed and believe and

3    based thereon allege that OCLC is using differential pricing for the same products and services

4    without disclosing those prices to its members or to the public in order to preserve its monopolies,

5    increase its profits and eliminate the rise of any competitors.

6         57.    In 2007, OCLC publicly announced its new initiative to establish an integrated

7    library system (ILS), which it refers to as "a web-scale or cloud-based delivery system." In June

8    2009, a major library commentator described OCLC's further extension into the ILS market:

     In a move that has stirred some controversy in the library automation industry,
     OCLC has announced that it will extend World Cat Local, initially positioned
     primarily as a discovery tool, to provide a complete suite of services for the
     automation of libraries. Work is now underway to create services associated with
     WorldCat Local that perform circulation, resource fulfillment, acquisitions, and
     license management. Taken together, these services will obviate the need for a
     library to operate its own integrated library system.

13        58.    OCLC used and uses its membership requirements to obtain the agreement,

14   assistance and services of libraries in developing OCLC products such as WorldCat Local, which

15   they are also obligated to purchase, while competitors, such as Innovative, are excluded from

16   what should be competitive procurement opportunities. OCLC's use of libraries to assist in

17   product development also enables OCLC to eliminate existing competitive products in those

18   libraries. OCLC developed, and is still developing, WorldCat Local and WorldCat Local "quick

19   start" through pilot programs in which many of its member university libraries have agreed to

20   participate, without compensation, purportedly to meet the requirements of their membership in

21   OCLC. These so-called pilot programs are used to avoid, or to attempt to avoid, the competitive

22   public procurement requirements of the universities that are involved. By invoking its

23   membership requirements, OCLC precludes for-profit competitors from having the same

24   opportunity to develop competitive products for such university libraries. Without following

25   competitive procurement practices and procedures, librarians in public universities committed

26   thousands of hours and resources to the development of these OCLC commercial products,

27   resources that are not available to for-profit library service vendors.

28        59.    OCLC has used its membership requirements—and resulting pilot programs—to

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 20 -

1   compel at least one major university to bypass required procurement practices in order to enable
2   and accelerate OCLC's entry into, and potential domination of, the ILS market with WorldCat
3   Local and to exclude competitors from access to a fair procurement and bidding process.

4        60.    Plaintiffs are informed and believe and based thereon allege that to advance its
5   interest in excluding access to competitors, OCLC has used its tax-free profits to pay personal
6   cash inducements to key university library officials and provide them with luxury trips to
7   expensive resorts to obtain their commitment to promote OCLC products and the development of
8   those products at their universities, all of which have assisted OCLC in accelerating its entry into,
9   and attempt to dominate, the ILS market.

10       61.    OCLC's WorldCat Local (introduced in 2008), a web-based utility that is designed
11  to provide all of the integrated library systems that are necessary to operate a library, and
12  WorldCat Local "quick start" (introduced in 2009), a stripped down version of WorldCat Local,
13  were the result of pilot programs at major universities. WorldCat Local "quick start" has been
14  distributed for free to libraries that purchase OCLC's "FirstSearch" to induce librarians to
15  purchase WorldCat Local. A Library Journal commentator in April 2009 reported: "Since
16  around April 2007, OCLC has been engaged in pilot projects with libraries to evaluate WorldCat
17  Local as a replacement, or supplement, to local online catalogs. Some of the pilot sites include
18  the University of Washington and the Melvyl catalog for the California Digital Library that serves
19  as a comprehensive catalog for the ten library systems of the University of California." OCLC
20  describes WorldCat Local "quick start" as "a locally branded catalogue interface and a simple
21  search box that presents localized search results for print and electronic content along with the
22  ability to search the entire WorldCat database and other resources via the web." This same
23  description applies to dozens of products that have been marketed by Innovative and other for-
24  profit companies for several years—with the exception of "the ability to search the entire
25  WorldCat database" as for-profit companies have no commercial access to WorldCat. OCLC is
26  using this restricted access to its WorldCat database monopoly—effectively a refusal to deal with
27  for-profit companies—in its attempt to monopolize the ILS market.

28       62.    Innovative has lost numerous contracts as a proximate result of OCLC's use of its

- 21 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

monopoly power over the WorldCat database and its exploitation of its member libraries' obligation to purchase OCLC products. While integrated library systems have historically been provided by for-profit commercial firms, by June 30, 2009 OCLC boasted 360 WorldCat Local installations and its intent to "add functionality for Web-scale delivery and circulation, acquisitions, license management, cooperative intelligence, patron management and more interoperability with interlibrary loan and ILS systems." A Library Journal commentator observed that "[t]he next logical step in OCLC's strategy moves these remaining tasks [circulation and acquisitions] into WorldCat Local, making it possible for a library to phase out its local integrated library system." In April 2010, the Library Journal reported that by the end of 2009, there were 624 WorldCat Local installations, including WorldCat Local "quick start." OCLC's intent to eliminate all for-profit competitors in the ILS market is clear and has been acknowledged by many commentators in the library community. Because of its monopolies in the bibliographic data, cataloging service and ILL service markets, there is a dangerous probability that OCLC will succeed in also monopolizing the market for ILS.

63. WorldCat Navigator, also introduced in 2009, is a consortial borrowing system that directly links multiple local library systems in a defined geographic area, providing inter-library lending among a discrete number of libraries. There are for-profit companies that have marketed a competitive product for several years, including Innovative through INN-Reach. The development and introduction of these OCLC bundled products—plus future planned products—are a major step in OCLC's attempt to monopolize all aspects of library systems and services, including integrated library systems that are presently provided by for-profit competitors, by eliminating competition for such services through its requirement that member libraries use OCLC services and through its refusal to allow access to the WorldCat database for commercial use.

64. OCLC also markets and sells an extensive list of other products and services to its members by bundling those products and services with FirstSearch, cataloging and/or ILL services. OCLC continues to restructure its bundled products around its monopoly products to gain maximum competitive advantage over for-profit companies. On March 17, 2010, OCLC

- 22 -

1   announced a phased shift in its product lines from FirstSearch bundled services to WorldCat
2   Local bundled services.    The purpose of this strategic change, as noted by one library
3   commentator, is "to compete with integrated library service (ILS) providers." In fact, it is to use
4   and extend its bibliographic data, cataloging service and ILL service monopolies to eliminate
5   for-profit competitors and monopolize the ILS market.

6       65.     Because OCLC exploits and leverages its three existing monopolies by (a) refusing
7   to allow for-profit companies to have access to the WorldCat database for commercial use,
8   (b) requiring libraries to purchase its products, (c) requiring libraries to assist in product
9   development, and (d) selective, discriminatory pricing schemes and bundling, there is a dangerous
10  probability that OCLC will also obtain a monopoly in the ILS market.

## OCLC's Acquisitions In Pursuit Of Its Monopolies

12      66.     OCLC has not gained its monopoly position in these markets through superior
13  products, technological innovation or business acumen, but through its anticompetitive conduct
14  and practices, including acquisitions of for-profit and nonprofit companies.

15      67.     OCLC's worldwide expansion from a small nonprofit cooperative of universities
16  in Ohio to a global conglomerate is well-known in the library community. Since 1982, using its
17  substantial untaxed monopoly profits, OCLC has acquired nineteen companies in the library
18  industry—fourteen of which were for-profit—either to obtain software and other products that
19  enable it to offer library services in competition with the remaining for-profit providers or simply
20  to eliminate products from the marketplace. OCLC uses its monopoly over the WorldCat
21  database, cataloging and ILL services and its nonprofit status as leverage. For example, OCLC
22  acquired RLG, the last remaining academic bibliographic data, cataloging and ILL service, in
23  2006. RLG was a library consortium founded in 1974 by several prestigious university libraries.
24  Until 2006, RLG competed with OCLC.

25      68.     The companies, competitors and software innovators around the globe acquired by
26  OCLC with tax-free profits, as well as four firms with whom it partnered, include the following
27  (those that were for-profit are starred):

- 23 -

Case No.                  COMPLAINT FOR FEDERAL AND STATE
                          ANTITRUST VIOLATIONS; UNFAIR COMPETITION

| | | |
|---|---|---|
| **Apr 1982** | OCLC purchased Total Library System from The Claremont Colleges in California. HP/3000 based system. | |
| **May 1983** | OCLC purchased Integrated Library System (ILS) from Lister Hill Center of National Library of Medicine. | |
| **Aug 1983** | **\*\*** OCLC acquired Avatar to assist in the development of LS/2000. | |
| **Feb 1987** | **\*\*** OCLC acquired ALIS I and I software from Data Phase, marketed under the new name of LS/2. | |
| **Jun 1993** | **\*\*** OCLC acquired Information Dimensions, Inc., from Battelle Memorial Institute. | |
| **Oct 1997** | **\*\*** OCLC acquired Blackwell North America's authority control service business. | |
| **Feb 1999** | OCLC acquired Washington Library Network (WLN). | |
| **Dec 1999** | **\*\*** OCLC and PICA entered a joint ownership agreement. | |
| **Feb 2000** | **\*\*** OCLC acquired PAIS (Public Affairs Information Service). | |
| **Oct 2000** | **\*\*** OCLC acquired Canadian-based Library Technical Services. | |
| **Oct 2000** | OCLC became the exclusive distributor for ILLiad software developed by Virginia Tech and Atlas Systems. | |
| **Jan 2002** | **\*\*** OCLC acquired NetLibrary. | |
| **May 2002** | **\*\*** OCLC entered into a partnership with Olive Software. | |
| **Jun 2002** | **\*\*** OCLC entered into a partnership with DiMeMa Inc. for CONTENTdm. | |
| **Aug 2004** | OCLC absorbed 24/7 Reference Service from Metropolitan Cooperative Library System. | |
| **Jun 2005** | **\*\*** OCLC PICA acquired Sisis Informationssysteme. | |
| **Nov 2005** | **\*\*** OCLC PICA acquired Fretwell-Downing Informatics Group. | |
| **Jan 2006** | **\*\*** OCLC acquired assets of Openly Informatics. | |
| **July 2006** | OCLC acquired The Research Libraries Group, Inc. | |
| **Aug 2006** | **\*\*** OCLC acquired DiMeMa, Inc. | |
| **July 2007** | **\*\*** OCLC acquired the remaining shares of OCLC PICA a library automation systems and services company headquartered in Leiden, Netherlands, to become its sole shareholder and changed its name to OCLC. | |
| **Jan 2008** | **\*\*** OCLC acquired Useful Utilities, LLC (developer of EZ Proxy). | |
| **Sep 2008** | **\*\*** OCLC acquired Amlib. | |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

| Case No. | COMPLAINT FOR FEDERAL AND STATE ANTITRUST VIOLATIONS; UNFAIR COMPETITION |
|---|---|

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

69.     A recent summary of noteworthy 2009 developments in the ILS market chronicled

OCLC's continuing expansion into library automation products through an aggressive merger and

acquisitions strategy using tax-free profits. The report noted:

> Nonprofit OCLC continued its buying binge of commercial library automation companies. In September 2008, it acquired Amlib, one of the major products in Australia, with implementations also in Africa, the UK, and the United States. OCLC's arsenal of library automation products acquired from commercial companies now includes Amlib, Sunrise, OLIB, LBS Local Library System, and CBS Central Library System as well as a variety of OpenURL linking, federated search, and portal products.

* * *

> OCLC, a nonprofit membership-governed organization, has in recent years acquired a number of for-profit companies involved in library automation technologies. Many of these acquisitions took place through OCLC PICA, which at the time was a majority-owned subsidiary and has since been wholly acquired and folded into the global organization.

* * *

> In 2008, OCLC purchased Useful Utilities whose software product, EZProxy, is a tool for authentication of remote users for access to restricted library resources. In September 2008, OCLC added to its arsenal of ILS technologies through the acquisition of Amlib, one of the major automation systems in Australia, from InfoVision Technologies.

> OCLC also began work on a new consortial borrowing solution, called WorldCat Navigator, to compete with products such as URSA from SirsiDynix and INN-Reach from Innovative Interfaces. The Orbis-Cascade Alliance, a large consortium of libraries in Washington State and Oregon, partnered with OCLC to develop a new product involving WorldCat and the VDX technology for document and resource sharing gained through the acquisition of Fretwell-Downing. [The Orbis-Cascade Alliance migrated from an INN-Reach system provided by Innovative in 2008.]

> OCLC offers WorldCat Local as a next-generation library interface that competes with commercial products such as Primo, Encore, and AquaBrowser.

70.     Similarly, an article in June 2009 concerning OCLC's announcement regarding

WorldCat Local "quick start" noted:

> This Product did not come out of thin air. . . . Much of the research and development of OCLC's new automation services taps into the talent and technologies of these acquired assets . . . .

71.     Significantly, many of OCLC's recent acquisitions are focused on strengthening its

monopolies and eliminating competition. OCLC's acquisition program, which is funded with tax

exempt profits, has enabled OCLC to eliminate for-profit competitors, strengthened its existing

- 25 -

1    monopolies and has given it the monopoly power to extend its monopoly power into the ILS
2    market.

3    72.    In addition to acquiring for-profit companies, OCLC also uses headhunters to
4    identify and recruit employees from for-profit firms. Plaintiffs are informed and believe and
5    based thereon allege that OCLC is using its tax-free dollars to recruit employees of for-profit
6    vendors of library services to eliminate competition and extend OCLC's monopoly to the ILS
7    market.

8    **OCLC's Use Of Its Tax-Exempt Status To Eliminate Competition**

9    73.    Over the years, OCLC has increasingly generated significant revenue, accumulated
10   a substantial surplus of capital, and generated increasing profits, which have been used to acquire
11   competitors or products and eliminate competition.    These profits could not have been
12   accumulated if OCLC were truly interested in its stated nonprofit mission of "reducing library
13   costs."    An insignificant percentage of OCLC's revenues come from membership, grants or
14   charitable contributions. OCLC is abusing its status as a tax exempt, nonprofit entity and unfairly
15   competes with for-profit companies, such as Innovative and SkyRiver, by using its nonprofit
16   status as leverage to monopolize the library services industry as the following numbers show:

| Year | OCLC Total Revenue | OCLC Total Revenue Over Total Expenses (Tax-Free Profits) | OCLC Corporate Equity |
|------|-------------------|-----------------------------------------------------------|----------------------|
| 2004 | $186,000,000 | $14,400,000 | $138,200,000 |
| 2005 | 196,000,000 | 17,200,000 | 157,400,000 |
| 2006 | 216,000,000 | 20,800,000 | 175,200,000 |
| 2007 | 235,000,000 | 19,500,000 | 206,400,000 |
| 2008 | 246,000,000 | 11,600,000 | 211,800,000 |
| 2009 | 240,000,000 | (31,900,000)* | 177,000,000 |

*The deficit resulted almost entirely from losses in the value of OCLC's securities portfolio.

24   74.    With corporate equity of $177 million as of June 30, 2009, OCLC has the means to
25   lower prices temporarily and selectively to those libraries considering SkyRiver to eliminate
26   SkyRiver as a competitor and to give away its WorldCat Local "quick start" service and recover
27   any lost profits through higher prices once competition from SkyRiver is eliminated from the
28   cataloging service market and Innovative and other for-profit competitors are eliminated from the

- 26 -

| Case No. | COMPLAINT FOR FEDERAL AND STATE ANTITRUST VIOLATIONS; UNFAIR COMPETITION |
|----------|--------------------------------------------------------------------------|

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

ILS market.

## The Anticompetitive Effects Of OCLC's Conduct On Competition, Plaintiffs And Consumers

75. As a result of OCLC's anticompetitive conduct described above, OCLC has illegally monopolized the bibliographic data market, the cataloging service market and the ILL market and is illegally attempting to monopolize the ILS market.

76. The WorldCat database was created largely at public expense by public and nonprofit libraries, including federally funded libraries such as the Library of Congress and the National Library of Agriculture, and through OCLC's tax-free profits. Library records should be freely and openly available for use and re-use either in the public domain or by reasonable means of access to all, including for-profit library services firms.

77. Advisors, trustees and governing member representatives of OCLC who at the same time work for member libraries ultimately have decision-making authority on the selection of the vendors for their respective library's services. By agreeing to advance the interests and products of OCLC they are effectively excluding competitors.

78. Libraries throughout the United States and elsewhere have been dealing with the compelling need to reduce their expenses, and SkyRiver presents an opportunity to achieve substantial cost savings in cataloging. Both libraries and their patrons/consumers would benefit from competition and innovation in library services at all levels, which can only be achieved by enforcement of the antitrust laws. In addition, MSU and CSULB, both public institutions, and other academic libraries and their patrons have been harmed. The new library material acquisitions of MSU and CSULB are not available for inter-library lending, and the cost of cataloging and interlibrary lending remains at a monopoly pricing level. OCLC has harmed the public, library users and seekers of information generally by excluding competition and discouraging market entry and innovation in the bibliographic data, cataloging, ILL and integrated library systems markets.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 27 -

1

**FIRST CLAIM FOR RELIEF**

2

**(Violation of Section 2 of the Sherman Act for Monopolization)**

3

79. Plaintiff SkyRiver incorporates by this reference each and every allegation of

4

paragraphs 1-78 above.

5

80. Defendant OCLC has monopoly power in the bibliographic data market, the

6

cataloging service market and the ILL market. OCLC is using its monopoly power over the

7

WorldCat database and ILL as leverage to force libraries to purchase its cataloging service.

8

OCLC is also using its monopoly power in cataloging through selective price increases and

9

selective price cuts to maintain its cataloging monopoly.

10

81. SkyRiver is informed and believes and based thereon alleges that defendant OCLC

11

acquired and is willfully maintaining and abusing its monopoly power in the bibliographic data,

12

cataloging and ILL markets as described herein by, among other things: requiring its member

13

libraries to agree to deal exclusively or predominantly with OCLC; requiring members to assist

14

OCLC to develop new products to the exclusion of competitors; aggressive acquisitions;

15

effectively using the WorldCat database and ILL service as leverage to sell its cataloging service

16

and unreasonably denying access to the bibliographic metadata of WorldCat and its member

17

libraries to SkyRiver and other potential competitors for commercial use. OCLC's three

18

monopolies are mutually reinforcing and give it an arsenal of tools to punish customers and harm

19

competitors. OCLC has acted intentionally and illegally to obtain and maintain its monopoly

20

power by anticompetitive and unreasonably exclusionary conduct, coercion and intimidation, and

21

its anticompetitive and unreasonably exclusionary conduct has enabled it to do so.

22

82. Defendant OCLC has acquired bibliographic records from 72,000 libraries over

23

the past 40 years through public resources, including public and other nonprofit libraries. During

24

that period, OCLC required that its members neither share nor allow use of their records by

25

for-profit firms for commercial purposes and intentionally created barriers to entry into the

26

bibliographic data, cataloging and ILL markets. OCLC is now using its monopoly power over its

27

WorldCat database and its ILL service as well as its nonprofit status as leverage to destroy

28

competition in the cataloging service market.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 28 -

1    83.    Defendant OCLC is using its monopoly power over its WorldCat database and ILL

2  to sell its products and services and to exclude its competitors. While SkyRiver was able to

3  assemble a catalog to compete with OCLC, OCLC's response was to increase its prices for record

4  uploading for ILL subscribers and selectively cut prices for cataloging services to only select

5  customers to harm and exclude SkyRiver from the market.

6    84.    The WorldCat comprehensive bibliographic database is an essential facility for

7  cataloging, for providing national and worldwide interlibrary lending among libraries and for

8  providing other competitive library services that require a broad bibliographic database. Without

9  access to the WorldCat database, potential competitors with innovative ideas and technologies

10  will not develop or try to enter the library cataloging, ILL or ILS markets to the detriment of the

11  public, libraries and consumers.

12    85.    A not insubstantial amount of interstate commerce in the bibliographic data

13  market, cataloging service market and ILL service market has been—and continues to be—

14  affected by OCLC's illegal conduct, and OCLC's conduct has harmed libraries, their customers

15  and consumers and has harmed competition.

16    86.    As a result of OCLC's violations of Section 2 of the Sherman Act, 15 U.S.C. § 2,

17  SkyRiver has been injured and continues to be injured in its business and property in an amount

18  to be determined at trial, which amount is to be trebled in accordance with 15 U.S.C. § 15.

19    87.    As a result of OCLC's violations of Section 2 of the Sherman Act, 15 U.S.C. § 2,

20  SkyRiver has suffered and will continue to suffer irreparable harm unless OCLC is restrained and

21  enjoined by this Court from continuing its wrongful actions intended to destroy SkyRiver's

22  business reputation and goodwill and unless this Court orders defendant OCLC to provide access

23  to the WorldCat database to SkyRiver and other potential competitors, on such terms as are just

24  and reasonable.

25                    **SECOND CLAIM FOR RELIEF**

26    **(Violation of Section 2 of the Sherman Act for Attempted Monopolization)**

27    88.    Plaintiff Innovative incorporates by this reference each and every allegation of

28  paragraphs 1-78 above.

- 29 -

1      89.    Defendant OCLC has monopoly power in the bibliographic data market, the cataloging service market and the ILL market. Defendant OCLC is using its monopoly power over the WorldCat database, its cataloging service and its ILL service as leverage to extend its monopoly to the ILS market by denying access to the WorldCat database to for-profit firms and by offering certain of its ILS products and services for free.

90.    Innovative is informed and believes and based thereon alleges that defendant OCLC acquired and is willfully maintaining and abusing its monopoly power in the bibliographic data, cataloging and ILL markets as described herein by, among other things, requiring its member libraries to agree to deal exclusively or predominantly with OCLC. OCLC is unlawfully using its leverage in these monopolies in an attempt to monopolize the market for ILS by: offering WorldCat Local "quick start" and WorldCat Local for free; requiring members to assist its development of products and services while excluding competitors; unfairly using such assistance to sell WorldCat Local to members of the OCLC cooperative and denying access to the WorldCat database to Innovative and other ILS vendors.

91.    Defendant OCLC is using its monopoly over its WorldCat database to sell its other products and services, such as WorldCat Local, and to exclude and eliminate its competitors in the ILS market by denying them access to the WorldCat database for commercial use. The WorldCat database is an essential facility for providing competitive ILS because without access to the WorldCat database, Innovative and other potential competitors cannot effectively compete with OCLC's WorldCat Local and other products and services offered by OCLC that depend on its WorldCat database monopoly. As a result, Innovative and other providers of ILS services and products and potential competitors with innovative ideas and technologies will not develop or try to enter the ILS market, all to the detriment of the public, libraries and consumers.

92.    Using the leverage of the WorldCat database and its member libraries' obligation to purchase OCLC's products and services, OCLC's intent to monopolize the ILS market is clear. Because OCLC is using its monopoly power over the WorldCat database, cataloging and ILL by (a) refusing to allow for-profit companies to have access to the WorldCat database for commercial use, (b) requiring libraries to purchase its products, (c) requiring libraries to assist in

- 30 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  product development, and (d) selective, discriminatory pricing schemes and bundling, there is a
2  dangerous probability that OCLC will obtain a monopoly in the ILS market.

3      93.    A not insubstantial amount of interstate commerce in the ILS market has been—
4  and continues to be—affected by OCLC's illegal conduct, and OCLC's conduct has harmed
5  libraries, their customers and consumers and has harmed competition.

6      94.    As a result of OCLC's violations of Section 2 of the Sherman Act 15 U.S.C. § 2,
7  Innovative has been injured and continues to be injured in its business and property in an amount
8  to be determined at trial, which amount is to be trebled in accordance with 15 U.S.C. § 15.

9      95.    As a result of OCLC's conduct and actions in violation of Section 2 of the
10  Sherman Act, Innovative has suffered and will continue to suffer irreparable harm unless OCLC
11  is restrained and enjoined from continuing its wrongful actions intended to destroy Innovative's
12  business reputation and goodwill and unless this Court orders defendant OCLC to provide access
13  to the WorldCat database to Innovative and other competitors, on such terms as are just and
14  reasonable.

## THIRD CLAIM FOR RELIEF

### (Violation of Section 1 of the Sherman Act for
### Unlawful Exclusionary Agreements)

17      96.    Plaintiffs SkyRiver and Innovative incorporate by this reference each and every
18  allegation of paragraphs 1-78, 80-85 and 89-93 above.

19      97.    Defendant OCLC has monopoly power in the bibliographic data market, the
20  cataloging service market and the ILL market.

21      98.    Plaintiffs are informed and believe and based thereon allege that defendant OCLC
22  has entered into and enforces agreements, policies and guidelines with its member libraries that
23  unreasonably restrain trade as described herein by among other things:

24          (a)     excluding or refusing to deal with plaintiffs by denying them access to the
25  WorldCat database for commercial use;

26          (b)     excluding plaintiffs from having access to the bibliographic data of its
27  member libraries' holdings for commercial use;

28          (c)     requiring its members to deal exclusively or predominately with OCLC for

- 31 -

| Case No. | COMPLAINT FOR FEDERAL AND STATE |
| | ANTITRUST VIOLATIONS; UNFAIR COMPETITION |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    library services and products;

2        (d)     requiring members to assist OCLC in developing products and excluding
3    for-profit firms from similar access;

4        (e)     offering products free to eliminate plaintiffs as competitors; and

5        (f)     bundling or tying products or services with its monopoly products and
6    services.

7        99.     A not insubstantial amount of interstate commerce in the bibliographic data
8    market, cataloging service market, ILL service market, and ILS market has been—and continues
9    to be—affected by OCLC's illegal conduct, and OCLC's conduct has harmed libraries, their
10   customers and consumers and has harmed competition.

11       100.    As a result of OCLC's violations of Section 1 of the Sherman Act, 15 U.S.C. § 1,
12   plaintiffs have been injured and continue to be injured in their business and property in an amount
13   to be determined at trial, which amount is to be trebled in accordance with 15 U.S.C. § 15.

14       101.    As a result of OCLC's conduct and actions in violation of Section 1 of the
15   Sherman Act, plaintiffs have suffered and will continue to suffer irreparable harm unless OCLC is
16   restrained and enjoined from continuing its wrongful actions intended to destroy plaintiffs'
17   business reputation and goodwill and unless this Court orders defendant OCLC to provide access
18   to the WorldCat database to plaintiffs and other potential competitors for commercial use, on such
19   terms as are just and reasonable.

20                          **FOURTH CLAIM FOR RELIEF**

21   **(Violation of Section 1 of the Sherman Act for Unlawful Tying Arrangements)**

22       102.    Plaintiff SkyRiver incorporates by this reference each and every allegation of
23   paragraphs 1-78, 80-85, 89-93 and 97-98 above.

24       103.    Defendant OCLC has monopoly power in the bibliographic data market, the
25   cataloging service market and the ILL market.

26       104.    Plaintiff SkyRiver is informed and believes and based thereon alleges that OCLC
27   has entered into and enforces agreements, policies and guidelines with its member libraries that
28   unreasonably restrain trade in the bibliographic data, cataloging, and ILL markets. OCLC has

- 32 -

| Case No. | COMPLAINT FOR FEDERAL AND STATE ANTITRUST VIOLATIONS; UNFAIR COMPETITION |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    willfully attempted to exclude SkyRiver from the bibliographic database and cataloging markets,
2    which are essential to enter the ILL market.

3        105.    OCLC's cataloging service and ILL service are separate services. Their functions
4    are different, and there are different markets or demands by libraries for these services.

5        106.    SkyRiver is informed and believes and based thereon alleges that OCLC treats
6    cataloging and ILL as separate services and prices them separately.

7        107.    To coerce libraries to use OCLC's cataloging service and not to use SkyRiver's
8    cataloging service, OCLC unreasonably increased the price of full participation in its ILL service
9    and/or uploading charges for libraries using SkyRiver's cataloging service to contribute new
10   acquisitions to the WorldCat database. The prices charged by OCLC to upload records by
11   libraries that did not agree to use OCLC's cataloging service are punitive and are intended to
12   exclude SkyRiver as a competitor for cataloging services. There is no efficiency or business
13   justification for OCLC's actions, which amount to a *de facto* tying arrangement.

14       108.    SkyRiver is informed and believes and based thereon alleges that OCLC had a
15   practice of allowing its member libraries that subscribed to the competing RLG cataloging service
16   to batch load their acquisitions to WorldCat for a modest per-record fee of approximately $0.23
17   so that those materials would be available for interlibrary lending among other academic libraries,
18   and that OCLC continues to extend this per-record fee to many libraries that do not use its
19   cataloging service.

20       109.    OCLC effectively has used its monopoly over the WorldCat database and ILL
21   service to force libraries to subscribe to its cataloging service by charging a punitive price to ILL
22   users for uploading new holdings for the benefit of all ILL users in order to eliminate SkyRiver as
23   a competitor in the cataloging service market. As described herein, OCLC's unlawful tying of its
24   cataloging service to its ILL service and bibliographic database give a clear signal to libraries
25   considering SkyRiver's cataloging service that OCLC's ILL service and/or record uploading
26   charges will be prohibitively increased if they use SkyRiver. OCLC's punitive pricing to MSU
27   and CSULB was intended to, and did, intimidate other libraries not to use SkyRiver's cataloging
28   service or suffer increased and punitive ILL-related *de facto* fees.

- 33 -

Case No.                    COMPLAINT FOR FEDERAL AND STATE
                            ANTITRUST VIOLATIONS; UNFAIR COMPETITION

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    110.   The purpose and effect of OCLC's tying arrangement through use of its monopoly

2    power over ILL is to prevent libraries from terminating OCLC's cataloging service and choosing

3    SkyRiver's lower cost cataloging service on the merits and to foreclose competing cataloging

4    services, thereby restraining competition in the cataloging service market.

5    111.   A not insubstantial amount of interstate commerce in the bibliographic data

6    market, cataloging service market and ILL service market has been—and continues to be—

7    affected by OCLC's illegal conduct, and OCLC's conduct has harmed libraries, their customers

8    and consumers and has harmed competition.

9    112.   As a result of OCLC's violations of Section 1 of the Sherman Act, 15 U.S.C. § 1,

10   SkyRiver has been injured and continues to be injured in its business and property in an amount

11   to be determined at trial, which amount is to be trebled in accordance with 15 U.S.C. § 15.

12   113.   As a result of OCLC's conduct and actions in violation of Section 1 of the

13   Sherman Act, SkyRiver has suffered and will continue to suffer irreparable harm unless OCLC is

14   restrained and enjoined from continuing its wrongful actions intended to destroy SkyRiver's

15   business reputation and goodwill and unless this Court orders defendant OCLC to provide access

16   to the WorldCat database to SkyRiver and other potential competitors, on such terms as are just

17   and reasonable.

18   **FIFTH CLAIM FOR RELIEF**

19   **(Violation of California Business & Professions Code**
     **Section 16720 and Section 16726 for Unlawful Restraints of Trade**
20   **and Unlawful Tying Arrangements)**

21   114.   Plaintiffs SkyRiver and Innovative incorporate by this reference each and every

22   allegation of paragraphs 1-78 and 97-101 above.

23   115.   Defendant OCLC has monopoly power in the bibliographic data market, the

24   library cataloging service market and the ILL market.

25   116.   Plaintiffs are informed and believe and based thereon allege that defendant OCLC

26   has entered into and enforces agreements, policies and guidelines with its member libraries that

27   unreasonably restrain trade as described herein by among other things:

28        (a)    excluding or refusing to deal with plaintiffs by denying them access to the

- 34 -

Case No.                    COMPLAINT FOR FEDERAL AND STATE
                            ANTITRUST VIOLATIONS; UNFAIR COMPETITION

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  WorldCat database for commercial use;

2  (b)  excluding plaintiffs from having access to the bibliographic data of its
3  member libraries' holdings for commercial use;

4  (c)  requiring its members to deal exclusively or predominately with OCLC for
5  library services and products;

6  (d)  requiring members to assist OCLC in developing products and excluding
7  for-profit firms from similar access;

8  (e)  offering products free to eliminate plaintiffs as competitors; and

9  (f)  bundling products or services with its monopoly products and services.

10  117.  Plaintiffs are informed and believe and based thereon allege that OCLC is using its
11  monopoly power in the bibliographic data, cataloging and ILL service markets obtained through
12  exclusionary agreements, policies and guidelines with its member libraries as leverage to exclude
13  SkyRiver from the bibliographic data, cataloging and ILL service markets, and to eliminate
14  Innovative and other competitors from the ILS market.

15  118.  OCLC's cataloging service and ILL service are separate services. Their functions
16  are different, and there are different markets or demands by libraries for these services.

17  119.  Plaintiffs are informed and believe and based thereon allege that OCLC treats
18  cataloging and interlibrary lending as separate services and prices them separately.

19  120.  To coerce libraries to use OCLC's cataloging service and not to use SkyRiver's
20  cataloging service OCLC unreasonably increased the price of ILL service and/or uploading
21  charges for libraries using SkyRiver's cataloging service to contribute new acquisitions to the
22  WorldCat database in order to make full use, and have the full benefit of, OCLC's ILL. The
23  prices charged by OCLC to upload records by libraries that did not agree to use OCLC's
24  cataloging service are punitive and intended to exclude SkyRiver as a competitor for cataloging
25  services. There is no efficiency or business justification for OCLC's actions.

26  121.  Plaintiffs are informed and believe and based thereon allege that OCLC had a
27  practice of allowing its member libraries that subscribed to the competing RLG cataloging service
28  to batch load their acquisitions to WorldCat for a modest per-record fee of approximately $0.23

- 35 -

Case No.       COMPLAINT FOR FEDERAL AND STATE
               ANTITRUST VIOLATIONS; UNFAIR COMPETITION

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

so that those materials would be available for interlibrary lending among other academic libraries.

122. OCLC effectively has used its monopoly over its database and ILL service to force libraries to subscribe to its cataloging service by charging a punitive price to ILL users for uploading new holdings for the benefit of all ILL users in order to eliminate SkyRiver as a competitor in the cataloging service market. As described herein, OCLC's unlawful tying of its cataloging service to its ILL service and bibliographic database give a clear signal to libraries considering SkyRiver's cataloging service that OCLC's ILL service and/or record uploading charges will be prohibitively increased if they use SkyRiver. OCLC's punitive pricing to MSU and CSULB was intended to, and did, intimidate other libraries not to use SkyRiver's cataloging service or suffer increased and punitive ILL-related fees.

123. OCLC is using its monopoly of the WorldCat database by offering its WorldCat Local "quick start" service for free to any library that subscribes to its other products, such as FirstSearch, in order to take over the ILS market from existing for-profit competitors by denying competitors access to the WorldCat database.

124. The purpose and effect of OCLC's tying arrangement and use of its monopoly power over ILL is to prevent libraries from choosing between OCLC's cataloging service and SkyRiver's lower cost cataloging service on the merits and to foreclose competing cataloging services, thereby restraining competition in the cataloging service market.

125. A not insubstantial amount of intrastate and interstate commerce in the bibliographic data market, cataloging service market and ILL service market has been—and continues to be—affected by OCLC's illegal conduct, and OCLC's conduct has harmed libraries, their customers and consumers and has harmed competition.

126. As a result of OCLC's violations of Section 16720 and 16726 of the California Business & Professions Code, plaintiffs have been injured and continue to be injured in their business and property in an amount to be determined at trial, which amount is to be trebled in accordance with Section 16750 of the California Business & Professions Code.

127. As a result of OCLC's conduct and actions in violation of Sections 16720 and 16726 of the California Business & Professions Code, plaintiffs have suffered and will continue

- 36 -

Case No.                    COMPLAINT FOR FEDERAL AND STATE
                    ANTITRUST VIOLATIONS; UNFAIR COMPETITION

1    to suffer irreparable harm unless OCLC is restrained and enjoined from continuing its wrongful

2    actions intended to destroy plaintiffs' business reputation and goodwill and unless this Court

3    orders defendant OCLC to provide access to the WorldCat database to plaintiffs and other

4    potential competitors, on such terms as are just and reasonable.

## SIXTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code Sections 17200 et seq. for Unfair Competition)

8    128.    Plaintiffs SkyRiver and Innovative incorporate by this reference each and every

9    allegation of paragraphs 1-78, 80-87, 89-95, 97-101, 103-113 and 115-127 above.

10    129.    Defendant OCLC's conduct as alleged herein constitutes unlawful and/or unfair

11    acts or practices in violation of California Business & Professions Code section 17200 *et seq.*

12    Among other acts, defendant has violated the Sherman Act (15 U.S.C. § 1 *et seq.*), the Clayton

13    Act (15 U.S.C. § 12 *et seq.*), and the Cartwright Act (Cal. Bus. & Prof. Code § 16700 *et seq.*), by

14    the unlawful conduct described hereinabove.

15    130.    By its willful acts to exclude SkyRiver from the bibliographic data, cataloging and

16    ILL markets and to harm Innovative and other competitors in the ILS market in violation of the

17    federal and California antitrust laws, OCLC has engaged in unlawful and unfair business

18    practices in violation of California Business and Professions Code section 17200, *et seq.*

19    131.    As a direct and proximate result of the foregoing unlawful and unfair agreements,

20    acts and practices of OCLC, plaintiffs have suffered and will continue to suffer irreparable harm,

21    including but not limited to harm to their business, property, business reputation and good will.

22    132.    OCLC intends to continue its wrongful actions and unless retrained and enjoined,

23    will do so. Plaintiffs' remedy at law is inadequate to compensate plaintiffs for the harm inflicted

24    and threatened by OCLC.

## PRAYER

26    WHEREFORE, PLAINTIFFS SKYRIVER AND INNOVATIVE PRAY for judgment

27    against defendant OCLC as follows:

28    1.    For a preliminary and permanent injunction on all Claims for Relief prohibiting

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  OCLC, its officers, directors, employees, agents, and anyone acting on its behalf from:

2      (a)  denying access to the WorldCat database to for-profit firms that provide

3  library services for commercial use;

4      (b)  requiring member libraries to use OCLC products or services;

5      (c)  requiring member libraries to assist OCLC in developing products and

6  excluding for-profit firms from similar access;

7      (d)  using punitive pricing for uploading records to the WorldCat database to

8  libraries that purchase ILL but do not purchase cataloging from OCLC; and

9      (e)  engaging in selective and discriminatory pricing through tying or bundling

10  arrangements.

11     2.  For a preliminary and permanent injunction on all Claims for Relief ordering

12  OCLC to:

13     (a)  provide access to the WorldCat database to for-profit firms that provide

14  library services on terms that are just and reasonable; and

15     (b)  disclose the criteria on which it bases its fees for cataloging, ILL and ILS

16  services to libraries using those services.

17     3.  For treble damages in an amount to be determined at trial on the First, Second,

18  Third, Fourth and Fifth Claims for Relief.

19     5.  For attorneys' fees and costs incurred in this action.

20     6.  For such other and further relief as the Court deems just and proper.

21  DATED: July 28, 2010                    SHARTSIS FRIESE LLP

22

23                                     By: _____

24                                          ARTHUR J. SHARTSIS

25                                     Attorneys for Plaintiff
                                       INNOVATIVE INTERFACES, INC.

26

27

28

- 38 -

Case No.                    COMPLAINT FOR FEDERAL AND STATE
                        ANTITRUST VIOLATIONS; UNFAIR COMPETITION

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1 **DEMAND FOR JURY TRIAL**

2 In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs SkyRiver

3 Technology Solutions, LLC and Innovative Interfaces, Inc. hereby demand a trial by jury on all

4 issues triable by a jury.

5 DATED: July 28, 2010 SHARTSIS FRIESE LLP

6

7 By: _____
ARTHUR J. SHARTSIS

8

9 Attorneys for Plaintiffs
SKYRIVER TECHNOLOGY SOLUTIONS,
LLC and INNOVATIVE INTERFACES, INC.

10

5556\005\1643453

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 39 -
Case No.                    COMPLAINT FOR FEDERAL AND STATE
                            ANTITRUST VIOLATIONS; UNFAIR COMPETITION

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111