# Exhibit A



Membership : **Governance**

# Governance

Member libraries and other cultural heritage institutions own the cooperative, and librarians guide and shape its services, policies and direction through a 15-member Board of Trustees—more than half of whom are librarians—and a Global Council of librarians, who are elected by Regional Councils of member libraries. This governance structure ensures regular and open dialogue between member libraries and OCLC management.

**Members**. Any library or other memory institution that embraces the OCLC values of collaboration and sharing is welcome. Institutions worldwide become members of OCLC by contractually agreeing to contribute intellectual content or share resources. Any member can participate in governance and bring resolutions to OCLC management through the Global Council via one of three Regional Councils: OCLC Europe, the Middle East and Africa (EMEA); OCLC Asia Pacific; and OCLC the Americas. The members participate in meetings of their respective Regional Councils and send Member Delegates to the Global Council.



**Regional Councils**. Regional Councils are assemblies of the OCLC members in their respective regions. The purpose of the Regional Councils is to strengthen the cooperative throughout the world and make it easier to participate in its governance. Members convene at one or more Regional Council meetings each year to keep current on issues of vital and immediate interest to the OCLC cooperative. The Regional Councils elect Member Delegates who attend the annual Global Council Meetings.

**Global Council**. The Global Council comprises Member Delegates elected by the Regional Councils. The Global Council's principal responsibilities are to elect six members of the Board of Trustees, ratify amendments to the Articles of Incorporation and Code of Regulations, and give counsel and advice to OCLC management. The Global Council convenes at least once a year at an annual Global Council Meeting.

**Board of Trustees**. The 15-member Board of Trustees possesses powers similar to those of university or public company trustees. In addition to the six Global Council-elected members, the Board consists of the President of OCLC and eight trustees elected by the Board itself, five of whom come from fields outside librarianship. The Board meets five times annually.

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates



# Amended Articles of Incorporation of OCLC Online Computer Library Center, Incorporated



**[May 20, 2008]**

This is a reproduction of the content of the legal document. The original document, with signatures, is on file in the OCLC Legal Department.

**Articles:**

First (name) | Second (location) | Third (purpose) | Fourth (Board) | Fifth (Membership) | Sixth (Global Council)

Seventh (amending articles) | Eighth (duration) | Ninth (earnings) | Tenth (dissolution) | Eleventh (currency)

**First**    The name of the corporation shall be OCLC ONLINE COMPUTER LIBRARY CENTER, INC. (the "Corporation").

**Second**    The place in this State where the principal office of the Corporation is to be located is in the City of Dublin, Franklin County, Ohio.

**Third**    The purpose or purposes for which the Corporation is formed are to establish, maintain and operate a computerized library network and to promote the evolution of library use, of libraries themselves, and of librarianship, and to provide processes and products for the benefit of library users and libraries, including such objectives as increasing availability of library resources to individual library patrons and reducing the rate of rise of library per-unit costs, all for the fundamental public purpose of furthering ease of access to and use of the ever-expanding body of worldwide scientific, literary and educational knowledge and information.

**Fourth**    The affairs of the Corporation shall be managed by the Board of Trustees. The qualifications of the Trustees, together with their terms of office, manner of election, removal, change of number, filling of vacancies and of newly-created trusteeships, powers, duties and liabilities, shall, except as otherwise provided in these Articles, or by the laws of the State of Ohio, be as prescribed by the Code of Regulations.

**Fifth**    There shall be two classes of members of the Corporation and they shall be Members, and Trustee Members. The voting powers of each class of members shall be only as defined in the Code of Regulations or as stated in these Articles.

**Sixth**    There shall be a Global Council composed of Member Delegates as prescribed in the Code of Regulations.

**Seventh**    These Articles may be amended at any business meeting of the Trustee Members called for that purpose provided that notice of the proposed amendment(s) has been sent to the Trustee Members at least ten (10) days prior to said meeting. A two-thirds (2/3) vote of all of the authorized Trustee Members of the Corporation is required for approval. The proposed amendment(s) must then be ratified by a majority vote of Member Delegates either (i) present at a meeting called for that purpose at which a quorum is present, or (ii) by virtue of a vote submitted by electronic communications equipment.

**Eighth**    The duration of the Corporation shall be perpetual.

**Ninth**    No part of the earnings, dues or receipts of the Corporation shall inure to the benefit of or be distributed to its members, trustees, officers or other private persons, except only that the Corporation shall be

Case3:10-cv-03305-JSW   Document21-1   Filed09/27/10   Page4 of 36

 OCLC®

About OCLC : Board of Trustees : **Guiding the cooperative**

## Guiding the cooperative

### The role of the OCLC Board of Trustees

The Trustees work closely with OCLC managers to set policy and goals. The Board approves strategic plans and programs and then evaluates results. The OCLC Strategic Leadership Team manages the day to day operations.

The Board performs an annual CEO evaluation and oversees CEO succession planning. Trustees approve budgets and oversee audits and other reports to ensure that OCLC stays financially secure and true to its public purpose.

Board members review potential opportunities, partnerships or acquisition proposals, to make sure each advances the mission and vision of OCLC.

### Who are we?

The Board is made up of 15 members from academic, public, state and national libraries. Experts in business, finance, and law complete this governing body. Collaboration within this group mirrors the culture of innovation and cooperation that OCLC embodies as the world's largest library organization.

Six trustees are elected from OCLC Members Council. The OCLC Board of Trustees also includes the President of OCLC and eight trustees elected by the Board itself: three from the library community, and five from fields outside librarianship.

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates

Case3:10-cv-03305-JSW    Document21-1    Filed09/27/10    Page5 of 36



About OCLC : Board of Trustees : **Committees**

# Committees

Committees of the OCLC Board of Trustees are responsible for oversight review of specific functions. Each committee is made up of Trustees who can provide knowledge and skills in that area of focus.

## Audit Committee

Together with the Board and executive management, the Audit Committee evaluates the performance of independent auditors, reviews auditors' plans and processes, and reviews audited financial statements. This committee also oversees risk assessment and mitigation plans.



## Executive Committee

The chairs of each committee, the Board Chair and the President and CEO coordinate the work across the Board committees. The Executive Committee exercises the authority of the Board in the management of the affairs of the corporation when the Board is not in session.

## Finance Committee

Responsible for the oversight of the financial health of OCLC. The Finance Committee reviews interim and annual financial results and the annual budget plan, the approval of loans, capital expenditures, mergers, acquisitions, dispositions and special expenditures. This committee also reviews long-term investment policy and banking resolutions and recommends action by the Board.



## Nominating and Board Development Committee

Assists in maintaining continuity of Board membership and managing the internal affairs and self evaluation of the Board. The Committee also assists with other duties assigned to it by the Board.



## Personnel and Compensation Committee

Provides oversight review of compensation and benefits for the employees of the corporation. This committee evaluates and reports to the Board of Trustees on matters concerning management performance, employee compensation and personnel policies, management development and continuity plans, and approves (but does not administer or manage) employee compensation and benefit programs.



## RLG Committee

Assists and advises the Board in its understanding of the OCLC Programs and Research division agenda and the potential corporate and community impact of the group's work. The RLG Committee supports the division's intention to become the leading venue for applied research, community building and prototyping of systems and services in support of research and learning through libraries, archives, museums and cultural heritage institutions.

## Membership Committee

Reviews and updates membership and governance protocols, which determine how membership is defined. The committee is comprised of both Board members and Global Council members, and contributes to the formation and constitution of the Global Council.

## Governance Transition Committee (ad hoc)

Working with Members Council, this committee develops the transition process for the new governance structure that will result in a Global Council and Regional Councils that extend participation in the collaborative to institutions around the world. The committee will work with the current Members Council Executive Committee and OCLC staff to develop and implement a transition plan.

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates

 OCLC

About OCLC : Board of Trustees : 2009-2010 Board members

## 2009–2010 Board Members



**BOARD CHAIR**
**Larry Alford**

Dean of University
Libraries, Temple
University



**BOARD VICE CHAIR**
**Edward W. Barry**

President Emeritus,
Oxford University Press



**Maggie Farrell**

Dean of Libraries,
University of Wyoming



**Anthony Ferguson**

University Librarian and
Chair of the Knowledge
Team, University of
Hong Kong



**Bernadette Gray-Little**

Chancellor, University
of Kansas



**Kathleen R.T. Imhoff**

Library Consultant



**Jay Jordan**

President and Chief
Executive Officer,
OCLC



**David P. Lauer**

Former President and
COO, Bank One, NA

Case3:10-cv-03305-JSW   Document21-1   Filed09/27/10   Page8 of 36



### James G. Neal

Vice President for
Information Services
and University Librarian,
Columbia University



### Bruce Newell

Director, Montana
Library Network (retired)



### Elisabeth Niggemann

Director General,
Deutsche
Nationalbibliothek



### John Patrick

President of Attitude
LLC



### David Roselle

Director of Winterthur
Museum and Country
Estate



### Robert A. Seal

Dean of Libraries,
Loyola University



### Lizabeth (Betsy) Wilson

Dean of University
Libraries, University of
Washington



### Sandra (Sandy) Yee

Dean of the Wayne
State University
Libraries and Library
and Information Science
Program, Detroit,
Michigan

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates

 **OCLC**

# David P. Lauer

## Former President and COO, Bank One, NA



**Dave Lauer** serves on the public corporate boards of Huntington Bancshares, Diamond Hill and R.G. Barry and serves on the audit committee of each of those boards. He also sits on the boards for several privately held companies, including: The Fishel Company, the W.W. Williams Company and Evans Capital Corp. He joined the OCLC Board of Trustees in 1999.

Dave, a CPA, retired from Deloitte & Touche in 1987 after 31 years of service. During his last 10 years he served the firm as the managing partner of the Columbus Office. Subsequently, he served as President of Bank One Columbus for two years and then as interim CFO of The OSU Health System.

In addition to his professional experience, Dave has served the community through various boards, including: the Greater Columbus Chamber of Commerce, The Ohio State University Hospitals, Columbus Public Schools Business Advisory Council, United Way of Franklin County, Capital University, Columbus Airport Authority and Franklin County Convention Facilities Authority.

Dave received a B.S. in business administration from Capital University in 1964 and a master's degree in accounting from Ohio University in 1966.

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates



News releases

## OCLC Global Council elects new member to Board of Trustees, Council vice president/president-elect

For more information:

Bob Murphy
E murphyb@oclc.org
T +1-614-761-5136

See also:
OCLC Governance

🔖 BOOKMARK

📶 RSS FEED

**DUBLIN, Ohio, USA, 28 April 2010**—The OCLC Global Council elected a new member to the OCLC Board of Trustees and new leaders for next year during its first ever meeting April 19 - 22 in Dublin, Ohio. Delegates representing libraries from 17 countries heard presentations and participated in discussions about the focus and shared values of the OCLC cooperative.

Global Council elected Brian E. C. Schottlaender, The Audrey Geisel University Librarian, University of California, San Diego Libraries, to the OCLC Board of Trustees. Mr. Schottlaender will be seated on the Board in November.

Mr. Schottlaender has been University Librarian at UC San Diego since September 1999. Prior to joining UCSD, his 20-plus year career in libraries has included positions at the California Digital Library; UCLA; the University of Arizona; Indiana University; and Firma Harrassowitz in Wiesbaden, Germany.

Berndt Dugall, Direktor/Librarian, Universität Frankfurt, Universitätsbibliothek Johann Senckenberg, Germany, was elected Vice President/President-Elect of the OCLC Global Council. Mr. Dugall will serve as Vice President of Global Council beginning July 1, 2010.

Jan Ison, Global Council President and Executive Director, Lincoln Trail Libraries System, presided over the first annual meeting since OCLC governance changed from a single Members Council to a Global Council and three regional councils—Americas, Asia Pacific, and Europe, the Middle East and Africa (EMEA). Global Council comprises member delegates elected by the Regional Councils and serves as a key strategic discussion forum and communication link between member libraries, Regional Councils and OCLC management and staff.

Some delegates were unable to travel to Dublin for the four-day meeting because their flights were delayed or cancelled due to disruptions in air travel caused by the volcano eruptions in Iceland. The meeting agenda was changed to allow time for some delegates to arrive from delayed flights, and for others to participate in the four-day meeting via streamed live video on the Web.

Council discussed several documents, including a Statement on Principles of Membership, OCLC Shared Values, and WorldCat Principles of Cooperation. Delegates will continue to review and revise these documents for consideration.

Council heard reports from OCLC leadership and staff, and participated in panel discussions on a variety of issues, trends and emerging technologies in libraries. A news release covering the start of the session was distributed last week.

The Global Council heard reports from each of the three Regional Council chairs: Patrick Wilkinson, Chair, Americas Regional Council, and Director, University of Wisconsin–Oshkosh, Forrest R. Polk Library; ChewLeng Beh, Chair, Asia Pacific Regional Council, and Senior Director Library & Professional Services and Director of SILAS, National Library Board, Singapore; and Berndt Dugall, Chair, EMEA Regional Council, and Direktor/Librarian, Universität Frankfurt, Universitätsbibliothek Johann Senckenberg.

The full agenda from the four-day meeting is now available. Video from all presentations

will soon be available on the OCLC Global Council Web site.

About OCLC
Founded in 1967, OCLC is a nonprofit, membership, computer library service and research organization dedicated to the public purposes of furthering access to the world's information and reducing library costs. More than 72,000 libraries in 171 countries have used OCLC services to locate, acquire, catalog, lend, preserve and manage library materials. Researchers, students, faculty, scholars, professional librarians and other information seekers use OCLC services to obtain bibliographic, abstract and full-text information when and where they need it. OCLC and its member libraries cooperatively produce and maintain WorldCat, the world's largest online database for discovery of library resources. Search WorldCat.org on the Web. For more information, visit the OCLC Web site.

Find out more about OCLC

OCLC, FirstSearch, WorldCat and WorldCat.org are trademarks/service marks of OCLC Online Computer Library Center, Inc. Third-party product, service and business names are trademarks/service marks of their respective owners.

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates

# Exhibit B

 OCLC

WorldCat : A global catalog : **WorldCat Record Use Policy**

# WorldCat Record Use Policy

In September 2009, the OCLC Board of Trustees convened the Record Use Policy Council to engage the global library community in developing the next generation of the WorldCat record use policy. The intent was to recommend to the OCLC Board a new policy that would be aligned with the present and future information landscape. The new policy would replace the Guidelines for Use and Transfer of OCLC Derived Records, developed in 1987.

## WorldCat Rights and Responsibilities for the OCLC Cooperative effective August 1, 2010

### A policy created by members and reviewed by the community

Our 12-member Record Use Policy Council undertook a detailed investigation of the issues and drafted a new policy that we introduced for community review in April 2010—*WorldCat Rights and Responsibilities for the OCLC Cooperative.* More than 275 comments were gathered via e-mail, phone, meetings and letters, in an online forum, and by monitoring blogs, listservs and Twitter. Your comments resulted in substantive additions and changes to the draft. At the end of May 2010, we submitted our revised policy statement to the OCLC Board, which approved the document during its June meeting.

### A continually evolving policy

The new policy recognizes as essential the need for OCLC members to share and reuse their data with many partners, across many systems, sites and applications. Our goal in developing this policy was to maximize the possibilities for open data sharing while balancing that imperative with some boundaries intended to sustain WorldCat, the services and outcomes it produces for members, and the OCLC cooperative over the long term. The new policy—*WorldCat Rights and Responsibilities for the OCLC Cooperative*—replaces the *Guidelines for Use and Transfer of OCLC Derived Records.* Because the data-sharing environment is constantly and rapidly evolving, this new policy will be regularly reviewed to ensure its continued timeliness.

### A code of good practice for the OCLC cooperative

We decided to emphasize a code of good practice for members of the cooperative, based on shared values, trust and reciprocity. The focus of the new policy is on member rights and responsibilities—instead of data ownership issues, detailed provisions or restrictions—with the general aim of fostering innovation in our ever-changing information landscape.

The new policy outlines OCLC members' rights to:

- Transfer their data to individual scholars for their personal, academic or scientific research or study;

---

**Read the Policy and FAQ**

WorldCat Rights and Responsibilities for the OCLC Cooperative

Frequently Asked Questions

Contact OCLC via email at recorduse@oclc.org.

**View related documents**

- New record use policy 'WorldCat Rights and Responsibilities for the OCLC Cooperative—effective August 1 [News release, June 18, 2010]

- OCLC's Public Purpose

- Membership and Governance Protocols

- Membership in the OCLC Cooperative

- Agents with existing agreements

- WorldCat Principles of Cooperation

- Guidelines for contributions to WorldCat

**View archived items**

- Draft for Community Review

- Draft for Community Review— Frequently Asked Questions

- Comparison Between Final Document and Draft for Community Review

- Online Community Forum Input

- Final report of the Review Board on Principles of Shared Data Creation and Stewardship

- Transfer their data to library consortia and public agencies working on behalf of libraries;

- Transfer their data to other libraries and educational, cultural or scholarly institutions, whether these institutions are members of OCLC or non-members;

- Transfer their data to agents acting on their behalf.

In addition, members are encouraged to refer OCLC to third parties to develop appropriate business arrangements and to refer new opportunities for working with third parties to OCLC.

**Robust community review**

During the community review period, members and other stakeholders in WorldCat sent us many carefully crafted comments and thoughtful advice. We thank those who took the time to submit questions, comments or suggestions that made the final policy better.

- Guidelines for the Use and Transfer of OCLC-derived Records

- Withdrawn proposed Policy on Use and Transfer of WorldCat Records

- FAQ for withdrawn proposed Policy on Use and Transfer of WorldCat Records

## OCLC Record Use Policy Council Co-Chairs



**Barbara Gubbin**

Director, Jacksonville Public Library, USA



**Jennifer Younger**

President Elect, OCLC Global Council and Edward H. Arnold Director of Hesburgh Libraries, University of Notre Dame, USA

## OCLC Record Use Policy Council Members



**ChewLeng Beh**

Global Council Delegate; Chair, OCLC Asia Pacific Regional Council; and Senior Director, Singapore National Library Board, Singapore



**Raymond Bérard**

Global Council Delegate and Director, ABES, France



**Karen Calhoun**

Vice President, OCLC WorldCat and Metadata Services, OCLC, USA



**Klaus Ceynowa**

Global Council Delegate and Deputy Director General, Bayerische Staatsbibliothek, Germany



**Christopher Cole**

Global Council Delegate and Associate Director for Technical Services, National Agriculture Library



**Lorcan Dempsey**

Vice President, OCLC Research and Chief Strategist, OCLC, USA



**Nancy Eaton**

Dean of University Libraries and Scholarly Communications, Penn State University, USA



**Clifford A. Lynch**

Executive Director, Coalition for Networked Information (CNI), USA



**Brian E. C. Schottlaender**

Global Council Delegate and The Audrey Geisel University Librarian, UC San Diego Libraries, USA



**Lamar Veatch**

Global Council Delegate and State Librarian, Georgia Public Library Service–University System of Georgia, USA

## Liaison to the OCLC Board of Trustees



**Larry P. Alford**

Chair, OCLC Board of Trustees and Dean of University Libraries, Temple University, USA

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates

Case3:10-cv-03305-JSW   Document21-1   Filed09/27/10   Page16 of 36



WorldCat : A global catalog : WorldCat Record Use Policy : **WorldCat Rights and Responsibilities for the OCLC Cooperative**

# WorldCat Rights and Responsibilities for the OCLC Cooperative

Date of Last Revision: 2 June 2010

## Table of Contents

1. **Scope, Premise, and Policy Objectives**

2. **Preamble**

   A. OCLC and WorldCat

   B. OCLC Management and Governance

   C. WorldCat, a Shared Resource

   D. WorldCat's Value and Sustainability, and the Need for a Policy

3. **OCLC Member Rights and Responsibilities**

   A. Rights

   B. Responsibilities

4. **OCLC's Responsibilities to Members**

5. **Addressing Disputed Use of WorldCat Data by Members**

6. **Policy Revision and Evolution**

**Appendix 1: Sample Language for Agreements Between Members and Their Agents**

**Appendix 2: Terms and Conditions of Agreements Between OCLC and OCLC Members' Agents**

**Appendix 3: Record Use Policy Council**

**Glossary**

## 1. Scope, Premise, and Policy Objectives

This policy was created by the Record Use Policy Council, a group charged by the OCLC Board of Trustees to craft a replacement for the "Guidelines for Use and Transfer of OCLC Derived Records," developed in 1987. The membership of the Council can be found in Appendix 3.

The policy is intended for the OCLC cooperative, which refers collectively to OCLC members, the OCLC governance structure (Board of Trustees and Global and Regional Councils), and the non-profit OCLC corporation. Members contribute to the OCLC cooperative through sharing of resources and commitment to the WorldCat Principles of Cooperation.

The purpose of the policy is to define the rights and responsibilities associated with the stewardship of the WorldCat bibliographic and holdings database by and for the OCLC cooperative, including the use and exchange of OCLC member-contributed data comprising that database. The policy is based on the premise that OCLC members value WorldCat as a comprehensive, timely, and accurate reflection of the consolidated holdings of those members. The policy's intent is to encourage the widespread use of WorldCat bibliographic data while also supporting the ongoing and long-term viability and utility of WorldCat and of WorldCat-based services such as resource sharing, cataloging, and discovery.

The objectives of this policy are to:

A. Maximize the utility and viability of WorldCat, enable and facilitate innovation based on WorldCat, and support the substantial network of relationships between OCLC members and their partners in today's information landscape, while sustaining the integrity of the WorldCat database and its economic underpinnings.

B. Promote successful collective action and self-governing behaviors by OCLC members to sustain WorldCat over the long term.

C. Support a spirit of trust and reciprocity within the OCLC cooperative, as well as a commitment to continual policy evolution as conditions in the information ecosystem change.

D. Define OCLC member rights and responsibilities for WorldCat contribution, access, and data use or transfer.

E. Define the rights of OCLC members to use bibliographic data they have extracted from the WorldCat database.

F. Define the rights of OCLC members to transfer or make available data they have extracted from the WorldCat database to non-members.

G. Provide suggested language for OCLC members to use in service agreements with agents.

H. Define OCLC's responsibilities for using member-contributed data.

I. Define responsible use of OCLC systems and services.

J. Define the steps OCLC and OCLC governance can take when disputes arise regarding use of WorldCat data.

K. Establish a clear and transparent process for management of future changes to this policy that ensures the participation of the cooperative.

L. Provide a stable policy foundation and framework that will help collaborating organizations (particularly outside of the membership) to have confidence that they can predictably and reliably build upon the WorldCat database in developing new services consistent with the mission and values of the cooperative.

## 2. Preamble

### A. OCLC and WorldCat

OCLC's public purposes include promoting the evolution of library use, of libraries themselves, and of librarianship, and providing processes and products for the benefit of libraries and their users. OCLC and its members form a cooperative to help members share resources, reduce costs, and increase their visibility and impact in the communities they serve. Together OCLC and its members have built WorldCat, the largest database of shared library holdings in the world, and a set of services that use this database. OCLC members, OCLC governance participants, and OCLC management all have roles in the community that builds, shares, uses, and manages the network resource that is WorldCat.

### B. OCLC Management and Governance

OCLC is the steward of the WorldCat database as well as the provider of access, services, infrastructure, software, hardware, and support. The OCLC Board of Trustees—made up of members from academic, public, state, and national libraries plus experts in business, finance, and law—works to ensure that OCLC stays financially secure and true to its public purposes. The Membership and Governance Protocols define how member delegates engage with various aspects of managing the cooperative and its central asset, WorldCat. In addition to other duties, delegates have responsibility for commenting on OCLC's actions and intentions, including policy matters.

## C. WorldCat, a Shared Resource

The WorldCat database is more than a collection of OCLC member-contributed records. Its value is in the cooperation and outcomes it supports, not in the ownership of the records themselves. While, on behalf of its members, OCLC claims copyright rights in WorldCat as a compilation, it does not claim copyright ownership of individual records. With millions of bibliographic descriptions and more than a billion holdings from OCLC members around the world, the WorldCat database is a central point of concentration for the largest library network in the world. WorldCat gives libraries a Web-scale presence. The more libraries participate, the better and more useful WorldCat becomes to libraries, their end users, and other organizations that want to interact with libraries on the Web.

WorldCat's value rests in its usefulness as:

1. **A bibliographic record supply.** Comprehensive coverage and high-quality, consistent records facilitate operational efficiency in member libraries.

2. **A registry of library holdings.** Bibliographic data tied to library locations creates a network which supports research and resource sharing.

3. **A discovery environment.** The library network can be accessed as a unit, enhancing convenience and reach. This network can be delivered into other discovery environments.

4. **An infrastructure for knowledge organization.** A common infrastructure supports shared approaches to description, authority control (through NACO, CONSER, etc.), and subject analysis and classification.

5. **An infrastructure for systemwide maintenance of metadata.** Shared infrastructure supports systemwide revisions (e.g., MARC updates, heading changes); data mining for enriched structure (e.g., FRBR, WorldCat Identities); and syndication into other environments.

6. **A source of intelligence about the systemwide "collective collection."** The aggregation of holdings data at the network level supports policy and service decisions about the management of collections within and across institutions.

7. **A repository of data available in multiple ways,** including via WorldCat APIs that allow people to combine WorldCat data with their own applications.

In addition to these benefits, the WorldCat database is a union of national and other union catalogs from around the world, as well as the closest approximation of a national union catalog of library holdings in the United States. This means that WorldCat is the fullest single source of worldwide library holdings available, access to which improves the efficiency with which items can be located in—and requested from—library collections.

## D. WorldCat's Value and Sustainability, and the Need for a Policy

A policy is needed to ensure the continued viability and value of WorldCat as a shared cooperative resource. This policy will:

1. Help maintain a shared community resource that benefits the cooperative of OCLC members;

2. Reinforce the collective commitment to shared values, self-governance, and a spirit of reciprocity and trust;

3. Provide the underpinnings for a business model that sustains WorldCat for the benefit of the cooperative that supports it.

The fact that OCLC has a public purpose does not mean that WorldCat is a "public good" in the economic sense. On the contrary, WorldCat is a shared community resource intended to benefit the cooperative of members who contribute to its growth and financially support it. The goal of sharing widely the benefits of WorldCat sits alongside the practical need to sustain the economic viability and value of WorldCat over the long term. Significant costs are involved in the ongoing provision of the high-quality database on which OCLC members rely. If the database does not receive the continued organizational support of OCLC members, there is a very real danger that it will become fragmented and lose its integrity, that its quality will be diminished, and that, consequently, its utility to the OCLC cooperative will be reduced.

Case3:10-cv-03305-JSW   Document21-1   Filed09/27/10   Page19 of 36

## 3. OCLC Member Rights and Responsibilities

### A. Rights

OCLC members who have extracted WorldCat data representing, or enriching the records for, their own holdings from the WorldCat database have the right to:

1. Load or incorporate such data into their library catalogs, or their discovery or resource-sharing systems, and into other intra-institutional services.

2. Use such data for purposes of supporting library collections' discovery and resource sharing; bibliographic verification; private study, learning, and teaching; and academic and scientific research.

3. Transfer or make available such data to individual scholars for their personal academic or scientific research or study, to library consortia or public agencies working on behalf of libraries, or to other libraries and educational, cultural or scholarly institutions (e.g., museums, archives, historical societies, research institutes), whether these institutions are members or non-members of OCLC, for these organizations' institutional or collaborative re-use.

   In these cases, the transfer or making available of WorldCat data and its subsequent uses (including copying, displaying, publishing, modifying, reformating, and/or creating works or services from) should be carried out in keeping with OCLC member community norms, OCLC's public purpose, and this policy's intent.

4. Transfer or make available WorldCat data representing their own holdings to agents they retain to perform services on their behalf that directly benefit the OCLC member (e.g., peer or consortial resource sharing, automated authority control, increased visibility of collections).

   a. In these cases, OCLC members should ensure that a written agreement exists with any such agent that limits the agent's use of WorldCat data to performance of the services contracted for by the OCLC member. Sample language for such agreements between members and their agents may be found in Appendix 1 below.

   b. If they also benefit the OCLC cooperative, other uses, transfers, or aggregations of WorldCat data representing a member's own holdings that serve the business purposes of an OCLC member's agent are encouraged, subject to the terms and conditions of a mutually acceptable separate agreement between the agent and OCLC. A general description of the current terms and conditions of such agreements can be found in Appendix 2 below.

OCLC has in place existing agreements with many agents and will continue to create them as member needs arise.

### B. Responsibilities

It is the responsibility of OCLC members to:

1. Abide by this policy, and ensure awareness of it both within their institutions and on the part of their agents, their cooperatives, and other organizations to which they make their data available.

2. Contribute and maintain bibliographic and holdings data consistent with the standards and guidelines adopted by the OCLC cooperative.

3. Make reasonable efforts to ensure that their contributions to WorldCat do not violate the rights of any third party.

4. Make reasonable efforts to attribute the OCLC cooperative as a contributor in works or services based substantially on WorldCat data.

5. Make reasonable efforts to ensure that the subsequent re-use and transfer of their WorldCat data by non-members is consistent with this policy and OCLC's public purposes and supports the long-term viability and utility of WorldCat.

6. Encourage and practice responsible use of OCLC systems and services, including:

Case3:10-cv-03305-JSW Document21-1 Filed09/27/10 Page20 of 36

a. not permitting unauthorized use of their OCLC logons or passwords;

b. not engaging in mass downloading from WorldCat without OCLC's prior written consent;

c. not engaging in mass distribution of data directly from WorldCat to non-members without OCLC's prior consent;

d. not engaging in other activities that diminish the value of WorldCat to the OCLC cooperative.

## 4. OCLC's Responsibilities to Members

It is the responsibility of OCLC, operating on behalf of the OCLC cooperative, to use member-contributed data to support its public purposes and to benefit the cooperative, including:

a. Adding member-contributed data to WorldCat, and maintaining such data consistent with the standards and guidelines adopted by the OCLC cooperative.

b. Modifying, enriching, or reformatting it.

c. Making it function within WorldCat-based systems and services.

d. Using it in WorldCat.org for discovery purposes.

e. Remixing and combining it with other data.

f. Entering into agreements to share it as broadly as possible with partner organizations and members' agents.

g. Honoring all existing agreements for the storage, maintenance, and usage of WorldCat records.

## 5. Addressing Disputed Use of WorldCat Data by Members

OCLC member use of data extracted from the WorldCat database is carried out in a diverse and rapidly-changing environment. It is, therefore, impossible to anticipate all of the conceivable uses to which members might want or need to put WorldCat data. OCLC members are encouraged to discuss with OCLC any uses that do not appear to be covered by this policy. If a particular use is determined to not be covered, OCLC and the member will seek a mutually agreeable resolution of the matter. If either party believes that timely resolution cannot be reached, then the matter will follow resolution and/or arbitration procedures to be determined by the Global Council and the Board of Trustees.

## 6. Policy Revision and Evolution

Because it is impossible to anticipate all of the conceivable uses to which members might want or need to put WorldCat data, this policy will be regularly reviewed in order to ensure its continued timeliness and applicability. OCLC will initiate a policy review at least every three years and will make certain that such reviews are conducted in an open and transparent way, and include opportunities both for substantive involvement of the OCLC governance structure and for public comment, as well as a formal change-adoption process.

## Appendix 1: Sample Language for Agreements Between Members and Their Agents

"In connection with Agent's performance of the services specified in this Agreement (the "Services") for Library, Library has made or will make available to Agent copies of bibliographic data, library holdings and/or other information representing Library's own holdings extracted from WorldCat, the online database of such information maintained by OCLC Online Computer Library Center, Inc. ("OCLC") and its members (hereinafter "WorldCat Data"). Except to the extent authorized by a separate written agreement between Agent and OCLC, Agent agrees that:

(i) it will make no copies and no use of WorldCat Data except as necessary to perform the Services for Library; and

Case3:10-cv-03305-JSW Document21-1 Filed09/27/10 Page21 of 36

(ii) it will not transfer or otherwise make available any WorldCat Data (or copies thereof) or any works based on or incorporating WorldCat Data (or any portion thereof) to any party except as necessary to perform the Services.

Agent will promptly delete all WorldCat Data received from Library from its computer systems when the WorldCat Data is no longer needed to perform Services. OCLC may enforce the terms of this paragraph on its own behalf directly against Agent. This paragraph shall survive any expiration or termination of this Agreement."

## Appendix 2: Terms and Conditions of Agreements Between OCLC and OCLC Members' Agents

The separate agreements between OCLC and OCLC members' agents to authorize the agents' use, transfer, or aggregation of WorldCat data referenced in Section 3A(4)(b) of the Policy might include the following general provisions, to the extent deemed appropriate by OCLC:

1. OCLC's authorization for the agent to use, transfer, or aggregate WorldCat data representing the OCLC member's own holdings for purposes that: (i) further OCLC's public purposes, and (ii) provide benefit to the OCLC cooperative and its members;

2. limitations on the agent's use, transfer, or aggregation of such WorldCat data as necessary to ensure the long-term utility and viability to OCLC members of WorldCat and the OCLC network of services;

3. an additional exchange of value between OCLC and the agent such as:

   (i) a reciprocal metadata sharing component, through which OCLC and the agent agree to share metadata for purposes of synchronizing OCLC's databases, including WorldCat, and the agent's database(s);

   (ii) a reciprocal linking component, through which OCLC and the agent agree to link to each other's databases/web sites for purposes of broadening access to physical and digital library collections; and/or

   (iii) other exchanges that provide value to the OCLC cooperative and its members;

   and/or

4. other provisions, terms, and conditions that are customary and/or appropriate for the transaction.

## Appendix 3: Record Use Policy Council

*Co-Chair*: **Barbara Gubbin**, Director, Jacksonville Public Library, USA

*Co-Chair*: **Jennifer Younger**, President-Elect, OCLC Global Council and Edward H. Arnold Director of Hesburgh Libraries, University of Notre Dame, USA

**ChewLeng Beh**, Global Council Delegate and Chair, OCLC Asia Pacific Regional Council; and Senior Director, Singapore National Library Board, Singapore

**Raymond Bérard**, Global Council Delegate and Director, ABES, France

**Karen Calhoun**, Vice President, WorldCat and Metadata Services, OCLC, USA

**Klaus Ceynowa**, Global Council Delegate and Deputy Director General, Bayerische Staatsbibliothek, Germany

**Christopher Cole**, Global Council Delegate and Associate Director for Technical Services, National Agricultural Library, USA

**Lorcan Dempsey**, Vice President, OCLC Research and Chief Strategist, OCLC, USA

**Nancy Eaton**, Dean of University Libraries and Scholarly Communications, Penn State University, USA

**Clifford A. Lynch**, Executive Director, Coalition for Networked Information (CNI), USA

Brian E. C. Schottlaender, Global Council Delegate and The Audrey Geisel University Librarian, University of California, San Diego, USA

Lamar Veatch, Global Council Delegate and State Librarian, Georgia Public Library Service–University System of Georgia, USA.

## Glossary

**Agent**. A library will typically contract with a variety of suppliers—vendors, cooperative organizations, and others—for services to achieve its goals. This may involve sharing of data with those suppliers. Examples include digitization of collections, discovery layer services, authority control, or resource sharing systems. These suppliers are 'agents.'

**Library Consortium.** For purposes of this policy, a library consortium is any cooperative association of libraries and/or educational, cultural, or scholarly institutions, (e.g., museums, archives, historical societies, research institutes) that was organized and exists for the primary purpose of providing services to its members and which operates on a not-for-profit basis.

**OCLC Cooperative**. The phrase "OCLC Cooperative" references collectively: OCLC members, the OCLC governance structure (Board of Trustees and Global and Regional Councils), and the non-profit OCLC corporation.

**OCLC Members**. OCLC members belong to the OCLC Cooperative, whose membership model is based on contribution to the shared interests of the OCLC Cooperative. Institutions worldwide become members of OCLC by contractually agreeing to contribute intellectual content to the Cooperative or to share resources with other members. For further information see Membership in the OCLC Cooperative.

**Public Good**. A public good has two key characteristics: it is difficult or impossible to prevent unauthorized parties from using the good, and one party's use of the good does not diminish the ability of another party to use it. These characteristics mean that once public goods has been supplied, they are fully available to everyone, and this in turn means that public goods are typically not made available through market mechanisms. They are instead usually supplied by government agencies and funded through taxation. Examples of public goods include national defense and street lights. "Club goods," also called "member goods" or "collective goods," are like public goods in that use of the good by one party does not diminish the ability of another party to use it. However with club goods (unlike public goods), unauthorized parties (e.g., those that do not contribute toward the cost of providing the good) can be excluded (in the absence of appropriate arrangements) from enjoying the benefits of the good. Because of this, the supply of a club good can be sustained through mechanisms that distribute the cost of providing the good across those who benefit from its use. Examples of club goods include satellite television, online subscription news services, agricultural cooperatives, and credit unions.

**WorldCat**. WorldCat is a database of bibliographic records and holdings data representing library collections. It is created through OCLC member contributions and OCLC management aggregation of data from multiple sources.

**WorldCat Data.** For purposes of this policy, WorldCat data is metadata for an information object, generally in the form of a record or records encoded in MARC format, whose source is or at one point in time was the WorldCat bibliographic database.

You have received WorldCat data when (1) you have extracted it directly from the WorldCat database using one of OCLC's services for members (e.g., Connexion, WorldCat Cataloging Partners, CatExpress, the OCLC Z39.50 Cataloging Service, Batchload services) or under the terms of a non-member agreement with OCLC; or (2) you have extracted it from an online catalog or another source to which extracted WorldCat data has been transferred or made available.

Identifying WorldCat as the source of data that has been transferred or made available downstream of the initial extraction from WorldCat can sometimes be complex. A combination of the following data elements in a bibliographic record can help determine if the record was initially extracted from WorldCat:

- An OCLC Control Number along with
  - the 001 field that includes value characters "ocm" or "ocn" and/or
  - the 035 field that includes the value "(OCoLC)" and/or
  - the 994 field

Case3:10-cv-03305-JSW   Document21-1   Filed09/27/10   Page23 of 36

**Approved by the OCLC Board of Trustees on June 14, 2010, effective August 1, 2010.**

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates

# Exhibit C

 **OCLC**

<u>Contacts</u> : **OCLC offices**

# OCLC offices

## Headquarters

6565 Kilgour Place
Dublin, Ohio 43017-3395
USA
**T** 614-764-6000
  800-848-5878 (USA and Canada only)
**F** 614-764-6096
**E** <u>oclc@oclc.org</u>

## Other US offices

| Office | Address |
|---|---|
| **OCLC CIP Upgrade Unit** | c/o Blackwell's Book Services<br>100 University Court<br>Blackwood, NJ 08012<br>USA<br>**T** 856-232-9300 |
| **OCLC Research San Mateo** | 777 Mariners Island Blvd., Suite 550<br>San Mateo, CA 94404-5008<br>USA<br>**T** 614-764-6000<br>  800-848-5878 (USA and Canada only)<br>**F** 650-287-2158<br>**E** <u>rlg@oclc.org</u> |
| **Ontario, California** | 3281 E. Guasti Road, Suite 560<br>Ontario, CA 91761-7670<br>USA<br>**T** 800-848-5800 (US only)<br>**F** 866-435-8362<br>**E** <u>support@oclc.org</u> |
| **Overland Park, Kansas** | 7400 West 132nd Street, Suite 240<br>Overland Park, Kansas 66213<br>USA<br>**T** 913-239-1200<br>  800-848-5878 (toll free within USA)<br>**F** 913-239-1224<br>**E** <u>support@oclc.org</u> |

| Seattle, Washington | 220 West Mercer St., Suite W-200<br>Seattle, WA 98119<br>USA<br>**T** 800-848-5878<br>   800-848-5878 (US and Canada only) |
|---|---|
| Washington, D.C. | 11 Dupont Circle NW, Suite 550<br>Washington, D.C. 20036-1207<br>USA<br>**T**  800-848-5800 (US only)<br>**F** 202-331-5788<br>**E** support@oclc.org |

## Other regional offices

**Jump to:** <u>Asia Pacific</u> | <u>Canada</u> | <u>Europe</u> | <u>Latin America and the Caribbean</u> | <u>Middle East</u>

### Asia Pacific

| Office | Address |
|---|---|
| **Asia Pacific** | 6565 Kilgour Place<br>Dublin, OH 43017-3395<br>USA<br>**T** 614-764-6341<br>**F** 614-764-4331<br>**E** <u>AsiaPacific@oclc.org</u> |
| **Australia and New Zealand** | Suite 5, 131 Paisley Street<br>Footscray, Victoria 3011<br>Australia<br>**T** +61-3-9362 8500<br>**F** +61-3-9362 8501<br>**E** <u>australia@oclc.org</u> |
| **Perth** | 2/298 Selby St North<br>Osborne Park Western Australia 6017<br>Australia<br>**T** +61-8-6104 7200<br>1300 260 795 (Local call within Australia)<br>**F** +61-8-9204 1399<br>**E** <u>support-amlib@oclc.org</u> |
| **China** | Room 1207, 12th Floor<br>China Electronics Plaza, Building B<br>No. 3, Dan Ling Road<br>Hai Dian District, Beijing 100080<br>China<br>**T** +86-10-8260-7538<br>**F** +86-10-8260-7539<br>**E** <u>china@oclc.org</u> |

## Canada

| Office | Address |
|---|---|
| **Canada** | 9955, avenue de Catania, bureau 135<br>Brossard, Québec J4Z 3V5<br>Canada<br>**T** 450-656-8955<br>  888-658-6583<br>**F** 450-618-8029<br>**E** canada@oclc.org |
| **Canada, Western** | DVPO 43024<br>Calgary, Alberta T2J 7A7<br>Canada<br>**T** 403-281-1730<br>  877-858-2058<br>**F** 614-718-7205<br>**E** canada@oclc.org |
| **OCLC Canada Library Technical Services** | 1465 St. James St.<br>Winnipeg, MB R3H 0W9<br>Canada<br>**T** 204-927-2707<br>  866-321-6762, ext 2 (toll free/sans frais)<br>**F** 204-927-2700<br>**E** canada@oclc.org |

## Europe

| Office | Address |
|---|---|
| **France** | 14, Place des Victoires<br>92600 Asnières sur Seine<br>France<br>**T** +33-(0)1-55-02-14-80<br>**F** +33-(0)1-47-93-50-13<br>**E** france@oclc.org |
| **Germany** | Grünwalder Weg 28g<br>82041 Oberhaching<br>Deutschland<br>**T** +49-(0)89-613-08-300<br>**F** +49-(0)89-613-08-399<br>**E** deutschland@oclc.org |
| **Germany (Berlin)** | Geschäftsstelle Berlin<br>Alt-Moabit 96 C<br>10559 Berlin<br>Deutschland<br>**T** +49-(0)89-613 08 300 (Oberhaching) |

| | |
|---|---|
| | **F** +49-(0)30-302 08 686<br>**E** deutschland@oclc.org |
| **Germany (Bonn)** | Geschäftsstelle Bonn<br>Ubierstr. 92<br>53173 Bonn<br>Deutschland<br>**T** +49-(0)228-377 369 0<br>**F** +49-(0)228-377 369 20<br>**E** deutschland@oclc.org |
| **Netherlands** | Schipholweg 99<br>2316 XA Leiden<br>Nederland<br>**T** +31-(0)71-524-65-00<br>**F** +31-(0)71-522-31-19<br>**E** nederland@oclc.org |
| **Switzerland** | St. Jakobs-Strasse 96<br>Basel, 4052<br>Schweiz<br>**T** +41-(0)61-378-80-70<br>**F** +41-(0)61-378-80-79<br>**E** schweiz@oclc.org |
| **United Kingdom & Ireland** | 8th Floor, West Wing<br>54 Hagley Road<br>Birmingham, B16 8PE<br>United Kingdom<br>**T** +44-(0)121-456-46-56<br>**F** +44-(0)121-456-46-80<br>**E** uk@oclc.org |
| **United Kingdom, Sheffield** | Brincliffe House<br>861 Ecclesall Road<br>Sheffield, S11 7AE<br>United Kingdom<br>**T** +44-(0)114-281-60-40<br>**F** +44-(0)114-281-60-41<br>**E** uk@oclc.org |

## Latin America and the Caribbean

| Office | Address |
|---|---|
| **Latin America and the Caribbean** | 6565 Kilgour Place<br>Dublin, OH 43017-3395<br>USA<br>**T** 614-764-6301<br>   800-848-5878, ext. 6301 Toll-free in the USA<br>**F** 614-718-1026<br>**E** america_latina@oclc.org |

| **México** | Ave. Amores 707 |
| | Col. Del Valle, D.F. 03100 |
| | México |
| | **T** +52-55-5687-3307 |
| | **F** +52-55-5523-9212 |
| | **E** yanezj@oclc.org |

## Middle East

| Office | Address |
| --- | --- |
| **Middle East** | 6565 Kilgour Place |
| | Dublin, Ohio 43017 |
| | USA |
| | **T** 614-764-6006 |
| | **F** 614-718-7272 |
| | **E** smithar@oclc.org |

© 2010 OCLC

Domestic and international trademarks and/or service marks of OCLC Online Computer Library Center, Inc. and its affiliates

# Exhibit D

LexisNexis® *Total Research System*                  Switch Client | Preferences | Sign Out | ? Help

Search  Research Tasks  Get a Document  Shepard's®  Alerts  Total Litigator  Transactional Advisor  Counsel Selector  Dossier | History | ⚙

FOCUS™ Terms                          Search Within  Original Results (1 - 1)    Go   Advanced...

Service:  Get by LEXSEE®
Citation:  11 Ohio St. 3d 198

*11 Ohio St. 3d 198, \*; 464 N.E.2d 572, \*\*;*
*1984 Ohio LEXIS 1136, \*\*\*; 11 Ohio B. Rep. 509*

OCLC ONLINE COMPUTER LIBRARY CENTER, INC., APPELLANT, v. KINNEY, COMMR., APPELLEE

No. 83-1713

Supreme Court of Ohio

11 Ohio St. 3d 198; 464 N.E.2d 572; 1984 Ohio LEXIS 1136; 11 Ohio B. Rep. 509

June 20, 1984, Decided

**PRIOR HISTORY:** [\*\*\*1] APPEAL from the Board of Tax Appeals.

On January 23, 1980, appellant, OCLC Online Computer Library Center, Inc. (hereinafter "OCLC"), applied for an exemption from taxation for certain real property located in Dublin, Ohio, including a five-story building and other improvements located on the property. The exemption was sought in accordance with R.C. 5709.07 and 5709.12 for 1979 and subsequent tax years.

OCLC is an Ohio non-profit corporation, created in 1967 as a means to share and increase the availability of bibliographic information among college libraries located in Ohio. At present, OCLC uses its Dublin facility to house and operate vast data storage equipment with which to accept bibliographic information provided by various public and private libraries throughout the United States and Canada. The bibliographic information pertains to the existence of books and the catalogues of participating libraries, essentially indicating the holdings of all member libraries.

OCLC's membership consists of one hundred eighty-four academic and public libraries in Ohio, and over two thousand six hundred libraries throughout North America. Its services are not directly available [\*\*\*2] to the public at large. Members are charged a fee, and in return they receive terminal equipment for online access to OCLC's computer facilities via dedicated telephone lines. OCLC further provides personnel and equipment in order to service and maintain its customers' computer terminals and other associated computer hardware. The bibliographic holdings of member libraries are entered into the data base for access by all other member libraries, thus facilitating the location of books and materials held by member organizations, and simplifying procedures for inter-library book transfers.

OCLC also provides cataloging information to member libraries. For example, when a library purchases a book already owned by another member library, a search of OCLC's data is made and, because the bibliographic record already exists in the data base, a catalogue record can be generated at a greatly reduced cost.

In addition to the aforementioned services, OCLC has engaged in research for companies, including Bank One of Columbus and Warner Amex QUBE, a cable television company. On one occasion, OCLC performed research for a telecomputing firm and, in return, was offered fifty percent of the [\*\*\*3] firm's stock for an additional price of one dollar.

The Commissioner of Tax Equalization (hereinafter "commissioner") denied the exemption on the basis that OCLC is neither a "public college or academy" or "public institution of learning," as those terms are employed under R.C. 5709.07, nor was the property found to be used "exclusively for charitable purposes" so as to entitle OCLC to an exemption under R.C. 5709.12. On appeal, the Board of Tax Appeals affirmed. In its appeal to this court, OCLC has abandoned its argument for an exemption as a public institution of learning in conjunction with R.C. 5709.07, and, as such, contests only the board's determination that it failed to meet the qualifications for a charitable exemption under R.C. 5709.12.

The cause is now before this court on an appeal as of right.

**DISPOSITION:** *Decision affirmed.*

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant taxpayer, a non-profit corporation, sought review of the decision from the Board of Tax Appeals (Ohio), which affirmed the decision from appellee tax commissioner that the taxpayer was not entitled to a charitable exemption under Ohio Rev. Code Ann. § 5709.12.

**OVERVIEW:** The taxpayer provided cataloging information to member libraries. The taxpayer applied for an exemption from taxation for certain real property and improvements located on the property. The taxpayer claimed

that because it served libraries, it qualified as an institution furthering human knowledge and, therefore, was a charitable institution. The commissioner denied the exemption on the basis that the taxpayer's property was not used "exclusively for charitable purposes" for an exemption under Ohio Rev. Code Ann. § 5709.121. The Board affirmed the denial, and the Board's decision was affirmed. The court applied a three-part test and determined that the taxpayer did not satisfy the criteria for an exemption under § 5709.121. The court rejected the taxpayer's argument that it demonstrated its entitlement to a charitable exemption based upon the charitable status of the institutions that it contractually served. Although the taxpayer's service greatly enhanced the ability of libraries to better serve the public, the taxpayer essentially offered a product to charitable institutions, for a fee, and was not itself a charitable organization.

**OUTCOME:** The court affirmed the Board's decision.

**CORE TERMS:** charitable, exemption, charitable institution, charitable purposes, furtherance, incidental, used exclusively, public purposes, endeavors, exempted, taxation, laundry, linen, customers, paying, vacant land, dissemination, entitlement, edification, vicarious, mankind, qualifies, exempt, charitable organization, research projects, tangible personal, property belonging, private gain, educational

**LEXISNEXIS® HEADNOTES**                                                              ⊟ **Hide**

Business & Corporate Law > Nonprofit Corporations & Organizations > General Overview 📖
Contracts Law > Types of Contracts > Personal Property 📖
Tax Law > State & Local Taxes > Personal Property Tax > Tangible Property > General Overview 📖
HN1⚹ Ohio Rev. Code Ann. § 5709.12 provides in part that real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation. In order to aid in the clarification of the phrase "used exclusively for charitable purposes," Ohio Rev. Code Ann. § 5709.121 provides that real property and tangible personal property belonging to a charitable or educational institution shall be considered as used exclusively for charitable or public purposes by such institution if it is otherwise made available under the direction or control of such institution for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit. More Like This Headnote |
Shepardize: Restrict By Headnote

Tax Law > State & Local Taxes > Administration & Proceedings > Judicial Review 📖
Tax Law > State & Local Taxes > Personal Property Tax > Exempt Property > General Overview 📖
HN2⚹ The following test determines whether a taxpayer has satisfied the criteria for an exemption under Ohio Rev. Code Ann. § 5709.121: To fall within the terms of § 5709.121, property must (1) be under the direction or control of a charitable institution or state or political subdivision, (2) be otherwise made available for use in furtherance of or incidental to the institution's charitable or public purposes, and (3) not be made available with a view to profit. More Like This Headnote | Shepardize: Restrict By Headnote

Education Law > Libraries > General Overview 📖
Governments > Local Governments > Libraries 📖
Tax Law > State & Local Taxes > Personal Property Tax > Exempt Property > General Overview 📖
HN3⚹ The dissemination of knowledge for the edification and improvement of mankind is regarded as a charitable object. Thus, public libraries have been extended charitable exemptions. More Like This Headnote |
Shepardize: Restrict By Headnote

Tax Law > State & Local Taxes > Personal Property Tax > Exempt Property > General Overview 📖
HN4⚹ It is the charitable activities of the taxpayer seeking the exemption that must be considered when reviewing an application for a charitable exemption. More Like This Headnote | Shepardize: Restrict By Headnote

Evidence > Inferences & Presumptions > General Overview 📖
Tax Law > State & Local Taxes > Personal Property Tax > Exempt Property > General Overview 📖
HN5⚹ Statutory exemptions from taxation are to be strictly construed, and the burden rests with the one claiming entitlement to an exemption to demonstrate that the property qualifies for the exemption. More Like This Headnote | Shepardize: Restrict By Headnote

**HEADNOTES**                                                                          ⊟ **Hide**

**HEADNOTES**

*Taxation -- Charitable exemption denied to provider of services to libraries, when -- Commercial research endeavors --
R.C. 5709.12 and 5709.121, construed.*

**COUNSEL:** Messrs. Carlile, Patchen, Murphy & Allison, Mr. Robert J. Kosydar, Mr. P. Michael DeAngelo and Mr. Denis J. Murphy, for appellant.

Mr. Anthony J. Celebrezze, Jr., [***4] attorney general, and Mr. James C. Sauer, for appellee.

Messrs. Teaford, Rich & Dorsey, Mr. Jeffrey A. Rich and Mr. Matthew T. Fitzsimmons, urging affirmance for amicus curiae, Board of Education of the Dublin Local Schools.

Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach, Mr. George L. Jenkins and Mr. Raymond D. Anderson, urging reversal for amici curiae, Ohio Library Association and Ohio Library Trustees Association.

**JUDGES:** CELEBREZZE, C.J., W. BROWN, SWEENEY, KERNS, C. BROWN and J.P. CELEBREZZE, JJ., concur. HOLMES, J., dissents. KERNS, J., of the Second Appellate District, sitting for LOCHER, J.

**OPINION BY:** PER CURIAM

**OPINION**

[*199] [**573] The question presented by this appeal is whether the board's decision denying OCLC a charitable exemption under R.C. 5709.12 and 5709.121 is reasonable and lawful.

HN1+R.C. 5709.12 provides, in pertinent part:

"* * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation. * * *."

In order to aid in the clarification of the phrase "used exclusively for charitable purposes," the General Assembly, in 1969, enacted [***5] R.C. 5709.121, which states in relevant part:

"Real property and tangible personal property belonging to a charitable or educational institution * * * shall be considered as used exclusively for charitable or public purposes by such institution * * * if it is either:

"(A) * * *

"(B) Otherwise made available under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit."

In Cincinnati Nature Center v.. Bd. of Tax Appeals (1976), 48 Ohio St. 2d 122, 125 [2 O.O.3d 275], the court set forth HN2+the following test to determine whether a taxpayer has satisfied the criteria for an exemption under R.C. 5709.121:

[*200] "To fall within the terms of R.C. 5709.121, property must (1) be under the direction [**574] or control of a charitable institution or state or political subdivision, (2) be otherwise made available 'for use in furtherance of or incidental to' the institution's 'charitable * * * or public purposes,' and (3) not be made available with a view to profit."

See, also, Ohio Masonic Home v.. Bd. of Tax Appeals (1977), [***6] 52 Ohio St. 2d 127 [6 O.O.3d 343]. The board concluded that OCLC failed to meet any of the criteria enunciated in Cincinnati Nature Center, supra.

OCLC first challenges the board's determination that the property sought to be exempted is not under the control of a charitable institution. OCLC argues that it does function as a charitable institution, much like the Chemical Abstracts division of the American Chemical Society whose claim for an exemption was reviewed by this court in American Chemical Soc. v.. Kinney (1982), 69 Ohio St. 2d 167 [23 O.O.3d 197]. In fact, OCLC argues in its brief that the decision in American Chemical Soc. controls the subject cause since its "activities are closely akin, if not the same in nature, as those of American Chemical Society."

We conclude, however, that OCLC's reliance upon American Chemical So., as controlling the present cause, is misplaced. Therein, the status of certain land and improvements, as well as Chemical Abstracts' charitable purpose, was not before this court, having previously been determined to be tax exempt under R.C. 5709.12 and 5709.121. (See dissenting opinion of Justice William B. Brown, at 173, fn. 1.) Instead, [***7] the focus of the court centered upon whether eight parcels of vacant land, representing approximately thirty acres, should also be exempted as used in furtherance of or incidental to the organization's charitable purpose within the purview of R.C. 5709.12 and 5709.121. Unlike the facts present in American Chemical Soc., the question of whether vacant land should be exempted under a claim that it is being used in furtherance of or incidental to a charitable purpose is simply not at issue in this appeal.

OCLC next contends that it has demonstrated its entitlement to a charitable exemption based upon the charitable status of the institutions which it contractually serves. As was recognized in Battelle Memorial Institute v.. Dunn (1947), 148 Ohio St. 53, 60 [35 O.O. 9]: "Generally, HN3+the dissemination of knowledge for the edification and improvement of mankind is regarded as a charitable object." Thus, public libraries have been extended charitable exemptions. Cleveland Library Assn, v.. Pelton (1880), 36 Ohio St. 253.

OCLC submits that because it serves libraries, which in turn benefit the general public through the dissemination of

knowledge for the edification [***8] and improvement of mankind, it qualifies as an institution furthering human knowledge and, therefore, is a charitable institution. This argument, however, simply constitutes an attempt by OCLC to obtain a vicarious charitable exemption by virtue of the activities of its customers.

In *Joint Hospital Services v.. Lindley* (1977), [*201] 52 Ohio St. 2d 153 [6 O.O.3d 371], we rejected a similar vicarious charitable exemption theory. In that case, a group of hospitals pooled their resources and established a laundry and linen service for their members, as well as for several other non-profit organizations.

As in the present case, the taxpayer relied upon the charitable status of its customers as the basis for seeking a charitable exemption. The court observed, however, that notwithstanding the charitable nature of the institutional customers who obtained the laundry and linen services, *HN4* it is the charitable activities of the taxpayer seeking the exemption which must be considered when reviewing an application for a charitable exemption. Although a laudable purpose, the taxpayer's laundry and linen service neither improved health nor alleviated illness and, accordingly, [***9] the exemption was denied.

[**575] So, too, in the instant cause, the record demonstrates that OCLC's activities more closely resemble those of a publisher of library materials or a data base firm specializing in information retrieval, such as Lexis or the New York Times Information Bank, rather than that of a library. Although OCLC's service may greatly enhance the ability of libraries to better serve the public, OCLC essentially offers a product to charitable institutions, for a fee exceeding its cost, and as the board concluded, is not itself a charitable organization. Cf. *Joint Hospital Services, supra*, at 155.

In addition, OCLC fails to address the effect that its commercial fee paying research endeavors have upon its status as an organization seeking a charitable exemption. Evidence adduced before the board reveals that OCLC has recently engaged in fee paying research projects for the private gain of commercial enterprises, including Bank One of Columbus, Warner Amex QUBE and Source Telecomputing Corporation. In its transaction with Source Telecomputing Corporation, OCLC negotiated an option to obtain fifty percent of the corporation's stock for an additional [***10] price of one dollar, in exchange for research performed.

Such commercial research endeavors have previously been determined by this court to preclude the issuance of a charitable tax exemption. Cf. *Battelle Memorial Institute v.. Dunn, supra*. Moreover, although OCLC may have originated as a charitable organization upon its creation in 1967, the organization, which now operates throughout North America for any library willing to pay its fee, and which engages in fee paying research projects for the private gain of commercial industries, has since transcended the realm of a charitable institution.

In reaching this conclusion, we again emphasize that *HN5* statutory exemptions from taxation are to be strictly construed, and the burden rests with the one claiming entitlement to an exemption to demonstrate that the property qualifies for the exemption. *Craftsman Type, Inc. v.. Lindley* (1983), 6 Ohio St. 3d 82, 84; *American Handling Equipment Co. v.. Kosydar* (1975), 42 Ohio St. 2d 150, 152 [71 O.O. 2d 120]; *National Tube Co. v.. Glander* (1952), 157 Ohio St. 407 [47 O.O. 313], paragraph two of the syllabus; *Battelle Memorial* [*202] *Institute v.* [***11] . *Dunn, supra*, at 60. Having failed in its burden to establish that it is a charitable institution under the first portion of the three-part test of *Cincinnati Nature Center*, we need not address OCLC's remaining contentions that the board erred in concluding that the second and third parts of the test also were not met.

For the foregoing reasons, the decision of the Board of Tax Appeals, being neither unreasonable nor unlawful, is affirmed.

*Decision affirmed.*

Service: Get by LEXSEE®
Citation: 11 Ohio St. 3d 198
View: Full
Date/Time: Wednesday, August 18, 2010 - 7:54 PM EDT

* Signal Legend:
⊗ - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
△ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
ⓐ - Citing Refs. With Analysis Available
▣ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis®   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2010 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

https://www.lexis.com/research/retrieve?_m=91594dfd073c5d0935a9d38be21d8af9&csvc...   8/18/2010

# Exhibit E

**Civil Filings By Year -- 2004 through 2009 (for the 12-month period ending September 30)
for the Northern District of California**

| Year | Total Civil Filings | Total Antitrust Filings | Total Civil Filings Per Judge | Median Time From Filing to Disposition For Civil Cases (in months) | Median Time From Filing to Trial For Civil Cases (in months) | Total Trials Completed Per Judge (both civil and criminal) |
|---|---|---|---|---|---|---|
| 2009 | 6059 | 92 | 433 | 9.4 | 24.5 | 6 |
| 2008 | 6175 | 162 | 441 | 7.7 | 30.0 | 6 |
| 2007 | 7074 | 422 | 505 | 6.7 | 24.9 | 8 |
| 2006 | 7812 | 105 | 558 | 7.4 | 25.0 | 8 |
| 2005 | 5465 | 89 | 390 | 9.8 | 28.0 | 10 |
| 2004 | 5785 | 48 | 413 | 8.2 | 22.5 | 10 |
| **Average Per Six-Year Period** | **6395** | **153** | **456.67** | **8.2** | **25.82** | **8** |

**Civil Filings By Year -- 2004 through 2009 (for the 12-month period ending September 30)
for the Southern District of Ohio**

| Year | Total Civil Filings | Total Antitrust Filings | Total Civil Filings Per Judge | Median Time From Filing to Disposition For Civil Cases (in months) | Median Time From Filing to Trial For Civil Cases (in months) | Total Trials Completed Per Judge (both civil and criminal) |
|---|---|---|---|---|---|---|
| 2009 | 2668 | 9 | 334 | 10.6 | 26.0 | 21 |
| 2008 | 2666 | 5 | 333 | 10.3 | 36.0 | 22 |
| 2007 | 2836 | 4 | 355 | 10.6 | 28.4 | 24 |
| 2006 | 2374 | 19 | 297 | 12.6 | 27.0 | 20 |
| 2005 | 2552 | 19 | 319 | 11.3 | 32.0 | 21 |
| 2004 | 2862 | 15 | 358 | 12.1 | 26.0 | 19 |
| **Average Per Six-Year Period** | **2659.67** | **11.83** | **332.67** | **11.25** | **29.23** | **21.17** |

Derived from Judicial Caseload Profiles from 2004 through 2009 [Administrative Office of the U.S. Courts, Federal Case Management Statistics, District Courts, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (last visited August 25, 2010)].  *See* Plaintiffs' Request for Judicial Notice, Exhs. B and C.

5556\005\1668906.2