Douglas R. Young (Bar No. 073248)
dyoung@fbm.com
C. Brandon Wisoff (Bar No. 121930)
bwisoff@fbm.com
Farella Braun + Martel LLP
235 Montgomery St., 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

James A. Wilson (*Pro hac vice*)
jawilson@vorys.com
Vorys, Sater, Seymour & Pease LLP
52 E. Gay Street
Columbus, OH 43215
Telephone: (614) 464-6400
Facsimile: (614) 464-6350

Attorneys for Defendant
OCLC ONLINE COMPUTER
LIBRARY CENTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYRIVER TECHNOLOGY SOLUTIONS, LLC, a California limited liability company, and INNOVATIVE INTERFACES, INC, a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>OCLC ONLINE COMPUTER LIBRARY CENTER, Inc., an Ohio non-profit corporation,<br><br>Defendant. | Case No.: 3:10-cv-03305-JSW<br><br>**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER VENUE**<br><br>Date: October 29, 2010<br>Time: 9:00 a.m.<br>Judge: Judge: Jeffrey S. White<br>Courtroom: 11, 19th Floor |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE
Case No. 3:10-cv-03305-JSW

25955\2386813.1

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION AND SUMMARY ................................................................................ 1

II. LAW AND ARGUMENT ................................................................................................. 2

    A. Plaintiffs Fail To Address the "Interest of Justice" Factor ..................................... 2

    B. Plaintiffs' Choice of Forum Does Not Deserve Deference..................................... 3

    C. Plaintiffs Cannot Rebut OCLC's Argument That Ohio Is a More Convenient Venue for This Lawsuit ........................................................................ 5

    D. Plaintiffs Cannot Rebut OCLC's Argument That Travel to California Will Inconvenience the Majority of Witnesses ............................................................... 7

    E. Plaintiffs Cannot Rebut OCLC's Argument That Sources of Proof Are More Easily Accessed in Ohio................................................................................ 9

    F. Plaintiffs Cannot Rebut OCLC's Argument That Ohio Has a Greater Interest in Litigating This Action Than California ................................................ 11

    G. Plaintiffs Cannot Rebut OCLC's Argument That an Ohio Court Is Equally Familiar with the Applicable Law......................................................................... 12

    H. Plaintiffs Cannot Dispute That the Southern District of Ohio's Court Docket Is Less Congested ...................................................................................... 13

III. CONCLUSION ................................................................................................................ 14

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE    - i -    25955\2386813.1
Case No. 3:10-cv-03305-JSW

# **TABLE OF AUTHORITIES**

**PAGE**

**CASES**

Colonial Med. Group, Inc. v. Catholic Healthcare West,
   No. C-09-2192 MMC, 2010 WL 2108123 (N.D. Cal. May 25, 2010) .............................. 12

County of Tuolumne v. Sonora Cmty. Hosp.,
   236 F.3d 1148 (9th Cir. 2001)......................................................................................... 13

Foster v. Nationwide Mut. Ins. Co.,
   No. C 07-04928, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ....................................... 9

Gates Learjet Corp. v. Jenson,
   743 F.2d 1325 (9th Cir. 1984).......................................................................................... 7

Glaxo Group Ltd. v. Genetech, Inc.,
   No. C 10-00675 JSW, 2010 WL 1445666 (N.D. Cal. Apr. 12, 2010) ............................... 2

In re Funeral Consumers Antitrust Lit.,
   No. C05-01804, 2005 WL 2334362 (N.D. Cal. Sept. 23, 2005) .................................. 1, 3

In re Yahoo! Inc.,
   No. CV 07-3125 CAS (FMOx), 2008 WL 707405 (C.D. Cal. Mar. 10,
   2008) ...................................................................................................................... 2, 6, 9

Italian Colors Restaurant v. Am. Express Co.,
   No. C 03-3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) .................................. 9

Little v. Bank One, Del., N.A.,
   No. C 05-01727 JSW, 2005 WL 3481468 (N.D. Cal. Dec. 19, 2005).............................. 9

Pacific Car & Foundry Co. v. Pence,
   403 F.2d 949 (9th Cir. 1968)............................................................................................ 3

Sherar v. Harless,
   561 F.2d 791 (9th Cir. 1977)............................................................................................ 2

Strigliabotti v. Franklin Res., Inc.,
   No. C 04-0883 SI, 2004 WL 2254556 (N.D. Cal. Oct 5, 2004) ...................................... 13

Tropos Networks, Inc. v. IPCO LLC,
   No. C 05-04281 JSW, 2006 WL 1883316 (N.D. Cal. July 7, 2006) ................................. 3

United States ex rel. Adrian,
   No. C 99-3864, 2002 WL 334915 (N.D. Cal. Feb. 25, 2002)......................................... 10

United States v. Brown Univ.,
   5 F.3d 658 (1st Cir. 1993) .............................................................................................. 12

United States v. Nat'l City Lines,
   337 U.S. 78 (1949).......................................................................................................... 3

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE      - ii -                              25955\2386813.1
Case No. 3:10-cv-03305-JSW

**STATUTES**
15 U.S.C. § 22 .................................................................................................................. 1, 3

Ohio Rev. Code § 5709.72(A) ............................................................................................. 11

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE - iii - 25955\2386813.1
Case No. 3:10-cv-03305-JSW

## I. INTRODUCTION AND SUMMARY

Plaintiffs' opposition to OCLC's transfer motion erroneously focuses on where the alleged antitrust injury to Plaintiffs occurred (Northern District of California) rather than on where the alleged activity supposedly giving rise to antitrust liability occurred (Southern District of Ohio). It is the latter that is relevant to this transfer motion because that is where the *relevant* witnesses and documents reside. There cannot be an antitrust injury if there has been no antitrust violation. The core allegation of Plaintiffs' complaint is that OCLC adopted policies and practices that supposedly restrain competition throughout the United States (not just in California). As demonstrated in OCLC's moving papers, the adoption and implementation of the policies and practices at issue occurred in the Southern District of Ohio, where OCLC is headquartered. The witnesses and documents relevant to those issues reside in that district. Neither Plaintiffs' Complaint nor their Opposition points to a single event relevant to the alleged antitrust violation that occurred in this District. Many of Plaintiffs' statements in their Memorandum in Opposition are either irrelevant or properly reserved for an opposition to OCLC's Motion to Dismiss, which OCLC will address at the appropriate time.

Plaintiffs seek to avoid this problem with two core arguments, neither of which can overcome the compelling case for transfer. First, Plaintiffs argue that the Clayton Act (15 U.S.C. § 22) nationwide venue provisions for antitrust litigation demand greater than normal deference to their choice of forum. The law is to the contrary. In re Funeral Consumers Antitrust Lit., No. C05-01804, 2005 WL 2334362, at *7 (N.D. Cal. Sept. 23, 2005). When, as in this lawsuit, the events alleged in the Complaint have little connection to this District, Plaintiffs' choice of forum is entitled to little weight. Second, Plaintiffs point to an exaggerated list of supposed California witnesses, though few, if any, have any relevant connection to the events actually alleged in the Complaint. They inflate the number of witnesses residing in California and manipulate the statistics addressing the relative congestion of California and Ohio courts. This alone does not overcome the evidence OCLC put forth in its Motion, which clearly demonstrated that transfer to the Southern District of Ohio is appropriate. While numbers can be manipulated, the evidence here shows that Plaintiffs' choice of venue should be given little deference because California

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE
Case No. 3:10-cv-03305-JSW

25955\2386813.1

bears only a tenuous relationship to Plaintiffs' antitrust allegations. When the proper standard is applied, transfer to the Southern District of Ohio clearly best serves the interests of justice and the convenience of the parties and witnesses. In re Yahoo! Inc., No. CV 07-3125 CAS (FMOx), 2008 WL 707405, at *3 (C.D. Cal. Mar. 10, 2008) (transfer granted because it is more convenient to litigate case in state where the defendant's corporate headquarters are located and the majority of witnesses work and reside).[1]

## II. LAW AND ARGUMENT

### A. Plaintiffs Fail To Address the "Interest of Justice" Factor

The first factor a court must consider in determining whether transfer is proper is whether transfer would favor the "interest of justice," which underlying considerations include "whether efficient and expeditious administration of justice would be furthered" if the lawsuit is transferred. Glaxo Group Ltd. v. Genetech, Inc., No. C 10-00675 JSW, 2010 WL 1445666, at *2 (N.D. Cal. Apr. 12, 2010) (quoting Sherar v. Harless, 561 F.2d 791, 794 (9th Cir. 1977)). In addition to the "interest of justice" factor, a court should also consider several "convenience" factors, namely, the plaintiff's choice of forum; convenience of the parties and witnesses; ease of access to sources of proof; local interest in controversy; familiarity of each forum with applicable law; and relative congestion in each forum. Plaintiffs addressed only the convenience factors and fail to address directly the "interest of justice" factor.

In its Motion, OCLC addressed the "interest of justice" factor and demonstrated that transfer would create efficient and expeditious administration of justice because (1) the majority of the witnesses reside in Ohio and surrounding states; (2) most depositions will occur in Ohio; (3) most, if not all, documents will be produced from Ohio; (4) the Southern District of Ohio would be readily available to handle discovery disputes in real-time; and (5) and if injunctive relief were granted (which OCLC obviously denies would be appropriate), the Southern District would be in a better position to handle the oversight of that injunction. (Motion to Transfer

---

[1] Plaintiffs spend a large portion of their Opposition attacking OCLC, again evidencing their use of this lawsuit as an anti-OCLC forum and a marketing tool for their own products. In particular, the following statements are incorrect, inaccurate, misstatements of fact, or exaggerations: page 3, lns. 16-28; 4, lns. 1-13; 6, lns. 25-28; 7, lns. 1-6, 22-23; 8, lns. 11-28; 9, lns 1-2; 10, lns. 21-22.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE - 2 - 25955\2386813.1
Case No. 3:10-cv-03305-JSW

1  Venue ("Mot.") 6.) All of these factors make it more efficient and expeditious to litigate in Ohio.
2  In their Opposition, Plaintiffs did not refute these contentions or offer any rationale for why the
3  interest of justice would be furthered by retaining this lawsuit in California. Plaintiffs gloss over
4  OCLC's arguments that the interest of justice favors transfer because an Ohio court could more
5  efficiently and expeditiously determine discovery disputes and monitor injunctive relief, and,
6  therefore, this factor must be construed in favor of OCLC.

       **B.**     <u>**Plaintiffs' Choice of Forum Does Not Deserve Deference**</u>

8  Plaintiffs appear to argue that the Clayton Act (15 U.S.C. § 22), the law granting them a
9  wide choice of venue in antitrust actions, entitles their choice of venue to special deference.
10  (Memorandum in Opposition to Transfer Venue ("Opp'n") 5 ("This Congressional mandate
11  strongly favors an antitrust plaintiff's choice of forum. . . .").) However, as the Northern District
12  explained, "This is not the law." <u>In re Funeral Consumers Antitrust Lit.</u>, No. C05-01804, 2005
13  WL 2334362, at *7 (N.D. Cal. Sept. 23, 2005) (citing <u>United States v. Nat'l City Lines</u>, 337 U.S.
14  78, 84 (1949)). There is no greater deference to an antitrust plaintiff's choice of venue than that
15  given to any other plaintiff.

16  Here, Plaintiffs' choice of venue is entitled to little deference because the allegedly
17  anticompetitive activities did not occur in California, let alone in the Northern District. "While
18  the plaintiff's choice of forum is normally entitled to great deference, minimal consideration
19  should be given to that choice where the operative facts do not occur within the selected forum."
20  <u>Tropos Networks, Inc. v. IPCO LLC</u>, No. C 05-04281 JSW, 2006 WL 1883316, at *3 (N.D. Cal.
21  July 7, 2006) (holding that the operative facts that gave rise to a patent infringement claim
22  occurred in the state where the defendant, not the plaintiff, was located) (citing <u>Pacific Car &</u>
23  <u>Foundry Co. v. Pence</u>, 403 F.2d 949, 954 (9th Cir. 1968)).

24  Because Plaintiffs' allegations are based on the premise that OCLC engaged in
25  anticompetitive behavior, the thrust of this lawsuit centers on OCLC's actions, not Plaintiffs'
26  alleged damages. Plaintiffs' alleged damages present the only nexus to the State of California.
27  As OCLC showed in its Motion, its operations are all based in Ohio, and Ohio is where OCLC
28  made all of the decisions and created all of the policies that Plaintiffs claim constitute

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE - 3 - 25955\2386813.1
Case No. 3:10-cv-03305-JSW

anticompetitive behavior. (Mot. 7 & Decl. ¶¶ 9-14.) To attempt to refute this, Plaintiffs claim that OCLC is governed by a Board of Trustees, most of whom are located outside of Ohio. (Opp'n 7.) While this is true, OCLC demonstrated that individuals primarily responsible for making OCLC's decisions and implementing OCLC policy are located in Ohio, including, but not limited to its Executive Group, Product Management, Human Resources, Information Technology, Legal, Sales, Marketing, Business Development, Software Development, Database Management, Finance, Member Services, Order Entry, Customer Support, and Research and Development departments. (Mot. 8.) The Board of Trustees has little, if any, role in this lawsuit because it is not involved in those day-to-day decisions; instead, it is involved in overseeing broad, general concepts relating to OCLC's continued mission. It is highly unlikely that any of the Board Members possess any information relevant to this lawsuit that could not be more efficiently presented by OCLC employees, most of whom reside in Ohio.

      In making allegations that OCLC engaged in anticompetitive behavior, this lawsuit calls into question OCLC's decisions and actions. Unable to avoid this, Plaintiffs attempt to misdirect the Court's attention to its alleged damages to find some plausible connection to California. For example, Plaintiffs allege that the harm they suffered arises from OCLC's treatment of California State University—Long Beach ("CSULB"), a non-party to this lawsuit (and not located in the Northern District), and speculate that the alleged harm from CSULB will spread to all 23 schools in CSU's system. (Opp'n 6.) Plaintiffs further claim, without providing any factual foundation or evidence, that they were similarly harmed by OCLC's relationship with the University of California-system ("UC"). (Opp'n 7.) This goes beyond the four corners of the Complaint. Plaintiffs also state in their Memorandum in Opposition that UC is helping OCLC develop a new product, which runs afoul of California's procurement laws. (Opp'n at 7-8.) Obviously, this new product cannot constitute a monopoly, and this allegation cannot possibly relate to Plaintiffs' antitrust claims. Plaintiffs' invocation of UC is just another indication of how far Plaintiffs are stretching the facts to establish any connection to California.

      Plaintiffs also make the unfounded argument that the State of California is disproportionally impacted by OCLC's allegedly anticompetitive behavior. Plaintiffs presumably

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE - 4 - 25955\2386813.1
Case No. 3:10-cv-03305-JSW

make this hypothetical argument to obscure the fact that only one California library (CSULB, located in the Central District, not the Northern District) has the cataloging software that is the subject of this lawsuit. In support, Plaintiffs offer a variety of statistics about the number of universities and libraries in California versus Ohio. (Opp'n 8.) As California is the most populous state in the Union, it is not surprising, then, that it has the most universities and libraries. If Plaintiffs' logic is accepted, then any lawsuit involving entities with locations in California would always be venued in California simply because of the sheer size of the state. However, this does not mean that California is the most convenient venue for, or even has a plausible connection with the acts and decision relevant to, *this lawsuit*.

### C. Plaintiffs Cannot Rebut OCLC's Argument That Ohio Is a More Convenient Venue for This Lawsuit

In its Motion, OCLC showed that Ohio is a more convenient venue for this lawsuit because OCLC's corporate headquarters are located near Columbus, as are most of the employees who may testify. (Mot. 8.) Despite Plaintiffs' unjustified accusation that OCLC was "less than candid" in describing its small California presence, OCLC previously set forth in its Motion and Declaration that its small office in Ontario, California does not contain employees who have responsibilities related to the claims in this lawsuit, and that the member service consultant located in the Los Angeles-area does not have knowledge related to this lawsuit. (Mot. 7 & Decl. ¶ 12.) Likewise, OCLC disclosed that it has a small research office in San Mateo (the remnant of RLG) whose operations have nothing to do with the claims in this case. (Id.) Plaintiffs ignored these paragraphs of OCLC's declaration, and instead speculated (with no evidence whatsoever) about OCLC's Vice President of RLG Programs and Development and a salesperson located in California. (Opp'n at 8.) As OCLC already disclosed, neither employee has information germane to Plaintiffs' allegations, because neither is involved in the decision making and policy implementation that lies at the heart of Plaintiffs' allegations of anticompetitive behavior.[2] (Decl.

---

[2] Plaintiffs erroneously refer to this salesperson as "Brian" Ahern, who is one and the same as the allegedly "unidentified" Las Flores, California employee, who OCLC in fact disclosed. (Opp'n 8, 10; Mot. 8 & Decl. ¶ 12.) Further, Plaintiffs' contention that OCLC's Declaration is "less than candid" is unjustified. OCLC explained: "OCLC does not own any real property in California. It has an office in San Mateo, California, which engages in research, software development, and

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE - 5 -
Case No. 3:10-cv-03305-JSW

25955\2386813.1

¶ 12.) While OCLC does have a small presence in California, and does transact business with libraries in California, the question for this Court is whether Ohio is more *convenient* for OCLC – the party with the necessary witnesses and documents and whose behavior is at issue in this lawsuit. See In re Yahoo! Inc., No. CV 07-3125 CAS (FMOx), 2008 WL 707405, at *3 (C.D. Cal. Mar. 10, 2008) (transfer granted because it is more convenient to litigate case in state where the defendant's corporate headquarters are located and the majority of witnesses work and reside). All evidence before this Court demonstrates that Ohio is dramatically more convenient to litigate this lawsuit.

Plaintiffs also attempt to bolster their contention that OCLC will not be inconvenienced by litigating in a forum over 2,000 miles away by making a variety of unsupported conjectures. For example, Plaintiffs claim that OCLC's statement that its executives are necessary to the smooth operation of its business "lacks credibility" and is "highly suspect." (Opp'n 10.) It is hardly "suspect" to assert that an organization runs more smoothly when its key executives are not traveling back and forth across the United States for hearings and trial. Plaintiffs then speculate about the travel schedules of OCLC's executives, speculations that have no evidentiary basis. (Opp'n 10.) The remainder of Plaintiffs arguments are similarly meritless. Simply, Plaintiffs have not demonstrated that California is as convenient for this lawsuit as Ohio, which is what this prong of the test requires. In contrast, OCLC has demonstrated that that the key personnel and documents relevant to the underlying activities are located at or near OCLC's headquarters in the Southern District of Ohio.

---

customer support for products unrelated to the claims in this lawsuit. OCLC also has a small office with training staff located in Ontario, California. None of the employees located in its San Mateo or Ontario offices have responsibilities related to the claims in this lawsuit or are likely to be witnesses concerning the allegations in this case. OCLC also has telecommuting agreements with several individuals and employs one member services consultant located in the Los Angeles-area, none of whom have any knowledge related to the claims in this lawsuit. The only OCLC employee located in California with knowledge related to the claims in this case is a library services consultant (i.e., salesperson) who resides in Las Flores, California [Michael Ahern]." (Decl. ¶ 12.)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE         - 6 -                                    25955\2386813.1
Case No. 3:10-cv-03305-JSW

### D. Plaintiffs Cannot Rebut OCLC's Argument That Travel to California Will Inconvenience the Majority of Witnesses

In attempting to prove that California is a more convenient venue, Plaintiffs concoct a list of witnesses who bear little to no relevance to this lawsuit, which allegedly arises out of OCLC's anticompetitive behavior. As the Ninth Circuit pointed out in <u>Gates Learjet Corp. v. Jenson</u>, 743 F.2d 1325 (9th Cir. 1984), the focus should not be on the "number of witnesses in each location" but instead on "**the materiality and importance of the anticipated witnesses' testimony**" and then the court should determine those witnesses' "**accessibility and convenience to the forum**." <u>Id.</u> at 1335-36. (emphasis added). Given the allegations in Plaintiffs' complaint, that OCLC engaged in anticompetitive behavior, the majority of witnesses likely will be decision-making employees at OCLC, the majority of whom are located in Ohio. To refute that obvious fact, Plaintiffs concoct a lengthy list of improbable witnesses solely to attempt to add weight to their otherwise unpersuasive argument for venue in California. While Plaintiffs characterize these witnesses as "critical," they fail to offer any evidence in support of that contention. (Opp'n 11.)

The witnesses Plaintiffs identify fall, generally, into four categories: (1) witnesses who are irrelevant to this lawsuit; (2) witnesses who were highlighted by Plaintiffs only because they are California residents; (3) witnesses who would have to travel regardless of the venue; and (4) witnesses who are duplicative.

In the first category, witnesses who are irrelevant, Plaintiffs listed several individuals at the University of California ("UC"), a non-party to this lawsuit. Plaintiffs' Memorandum in Opposition is the first and only time that Plaintiffs alleged that UC has somehow been damaged by OCLC's actions or that it has evidence to support Plaintiffs' antitrust claims. As discussed above, the "facts" Plaintiffs allege relating to UC have no relevance to the antitrust claims in this case. Plaintiffs also listed several OCLC employees that OCLC already showed are not involved in the day-to-day decision-making of OCLC. (Mot. 8 & Decl. ¶ 12.) Plaintiffs presumably ignore this portion of OCLC's Motion and Declaration because they cannot offer evidence to refute OCLC's proof.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE - 7 - 25955\2386813.1
Case No. 3:10-cv-03305-JSW

1  The second category of witnesses, those listed only because they are California residents, includes an unnamed group of "Representatives from libraries associated with OCLC WorldCat Local and Navigator pilot projects in California"; OCLC employees located in California who, as OCLC previously showed, have no relationship to the allegations in this complaint; and CSU employees who only will be able to offer tangential testimony regarding discussions that are likely better memorialized in business documents. (Opp'n 11 & Straus Decl. ¶ 3 & Ex. A; Mot. 8 & Decl. ¶ 12.)[3]

In the third category of witnesses, those who would have to travel regardless of the venue, Plaintiffs have named several individuals in East Lansing, Michigan and Philadelphia, Pennsylvania. (Straus Decl. ¶ 3 & Ex. A.) Even if some of these witnesses have purportedly agreed to travel to California, it is indisputable that it would be more *convenient* – the purpose of this prong of the balancing test – for them to travel to Ohio.[4] Plaintiffs also argue, "It is unlikely that many, if any, California third-party witnesses would be willing to travel to Ohio given the inconvenience and time involved," which does not make sense, given Plaintiffs' argument that Michigan witnesses *would* be willing to travel to California, despite "the inconvenience and time involved." (Opp'n 11.) Plaintiffs are simply distorting their witness list.

Finally, the fourth category of witnesses, those who are duplicative, includes six of Plaintiffs' employees, despite the fact that the heart of this lawsuit is OCLC's actions, not Plaintiffs. (Straus Decl. ¶ 3 & Ex. A.)[5] This is a final example of Plaintiffs' attempt to draw more connections to California than actually exist.

---

[3] It is hardly a coincidence that Plaintiffs named only *three* (of a total of twenty) witnesses who reside in Ohio as having evidence in support of their claims against OCLC, *an Ohio entity headquartered in Ohio*. (See Straus Decl. ¶ 3 & Ex. A.)

Further, Plaintiffs state that OCLC's declaration, "acknowledges that OCLC's treatment of CLS Long Beach is one of the significant events alleged in the Complaint." (Straus Decl. ¶ 7.) OCLC's declaration does not, in fact, acknowledge this.

[4] Exhibit B to the Straus Declaration contains redacted emails that fail to provide the circumstances under which those Michigan State employees allegedly agreed to travel to California.

[5] Any testimony Plaintiffs' employees might seek to give regarding the statements of customers as to OCLC's actions would obviously be inadmissible hearsay. Plaintiffs' declarations do not claim any of these witnesses have direct knowledge of OCLC's actions.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE - 8 -
Case No. 3:10-cv-03305-JSW

25955\2386813.1

Because OCLC has demonstrated that the majority of the material witnesses in this lawsuit will be located in Ohio, or located closer to Ohio than California, this factor favors transfer to the Southern District of Ohio.

### E. Plaintiffs Cannot Rebut OCLC's Argument That Sources of Proof Are More Easily Accessed in Ohio

Plaintiffs gloss over OCLC's argument that a voluminous amount of documents is either stored as paper copies at OCLC's Dublin, Ohio headquarters, or electronically maintained on servers there. (See Mot. 11 & Decl. ¶¶ 15, 22.) OCLC showed that nine discrete categories of potentially relevant documents, which together may number in the hundreds of thousands of pages, are located in Dublin, Ohio. (Mot. 11 & Decl. ¶¶ 15, 22.) Despite this, Plaintiffs argue, "OCLC has made no showing, however, that this factor weighs in its favor." (Opp'n 12.) Plaintiffs only response is that because OCLC is engaged in business which is transacted electronically, OCLC should have no problem producing these hundreds of thousands of pages of documents in California. (Opp'n 12.) Even though many companies have moved towards electronic storage and production of documents, case law from this District still holds that the locus of the documents is a weighty factor in determining which venue is most convenient. See, e.g., Little v. Bank One, Del., N.A., No. C 05-01727 JSW, 2005 WL 3481468, at *2 (N.D. Cal. Dec. 19, 2005) (stating that plaintiff's contention that sources of proof are computerized failed to tip the balance away from transfer); see also In re Yahoo! Inc., No. CV 07-3125 CAS (FMOx), 2008 WL 707405, at *9 (C.D. Cal. Mar. 10, 2008) (location of relevant documents retains relevance to the venue inquiry in spite of "modern copying and reproduction technologies") (internal quotation omitted). In fact, even when evidence is available in electronic format, the Northern District of California has held that though "developments in electronic conveyance have reduced the cost of document transfer somewhat, the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found." Foster v. Nationwide Mut. Ins. Co., No. C 07-04928, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007) (transferring case to Ohio when defendant's national office and likely witnesses were in Ohio) (citing Italian Colors Restaurant v. Am. Express Co., No. C 03-3719 SI,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE - 9 -
Case No. 3:10-cv-03305-JSW

25955\2386813.1

2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003)). Regardless of whether the documents are maintained electronically, which is impossible to even verify at this point, the documents are located in Dublin, Ohio, the proper venue for this action.

Further, the respective custodians of these records work and live in Ohio. (Mot. 12 & Decl. ¶ 23.) See Yahoo! Inc., 2008 WL 707405, at *9 (granting defendant's motion to transfer where defendant's "headquarters is the factual center of this case, and the locus of all relevant decision making") (internal quotation omitted). As the number of electronic documents has exponentially increased in the era of e-mail, document custodians have played a greater role in litigation, and that will likely be no exception in this lawsuit. The burden of transporting all of OCLC's hundreds of thousands of pages of documents and all necessary document custodians over 2,000 miles away supports transfer to the Southern District of Ohio.

As OCLC already showed in its Motion, few, if any of the relevant, documents are stored in this District, and those limited documents that are located here likely relate only to Plaintiffs' alleged damages. (Mot. 12.) Plaintiffs state only that, "all of SkyRiver's and Innovative business and transactional documents, databases and servers are located in the Northern District" without demonstrating how any of those documents are relevant to their allegations that OCLC engaged in anticompetitive behavior. (Opp'n 12.) Before a court even reaches the issue of damages in an antitrust lawsuit, Plaintiffs must first prove that an antitrust violation actually occurred (which it cannot do) and then must further prove the anticompetitive act itself caused Plaintiffs' alleged damages (which it will likewise be unable to do).

Finally, Plaintiffs allege that third-party witnesses will have "substantial" documentary evidence without explaining what type of evidence that may be, or explaining why that same evidence would not already be in the hands of Plaintiffs or OCLC. (Opp'n 12-13.) Because Plaintiffs failed to identify what this "substantial" evidence might be, this argument should be disregarded. See, e.g., United States ex rel. Adrian, No. C 99-3864, 2002 WL 334915, at *4 (N.D. Cal. Feb. 25, 2002) (granting transfer where, *inter alia*, plaintiff's claim that a "substantial number" of documents are in California was "vague and unsupported.")

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE
Case No. 3:10-cv-03305-JSW

- 10 -

25955\2386813.1

1   As OCLC demonstrated in its Motion, the vast majority of the documentary evidence and
2   all of OCLC's document custodians are located in Ohio. This factor favors transfer to the
3   Southern District of Ohio.

### F. Plaintiffs Cannot Rebut OCLC's Argument That Ohio Has a Greater Interest in Litigating This Action Than California

OCLC established in its Motion that Ohio courts have a stronger interest in the issues raised by this lawsuit because, among other concerns, Plaintiffs have raised allegations that OCLC is improperly exercising its non-profit status. In response, Plaintiffs cite a 1984 Ohio Supreme Court case which found that OCLC was not exempt from real estate and property tax under then-enacted Ohio law. (Opp'n 12.) In reality, as a result of that lawsuit, the Ohio Legislature demonstrated that it was concerned with OCLC's non-profit mission by creating for OCLC a statutory exemption from the property tax requirements. Indeed, the language of the statute reinforces OCLC's argument that the State of Ohio has a particularly strong interest in OCLC's tax-exempt mission:

> All tangible and intangible personal property shall be exempt from taxation if the following conditions exist in the year for which exemption is sought: (A) The owner is a nonprofit corporation that is exempt from federal income taxes under the provisions of section 501(c)(3) of the Internal Revenue Code of 1954, as amended, and the owner's primary purposes are **conducting research and development in library technology and providing computerized or automated services to public, charitable, or educational libraries**.

Ohio Rev. Code § 5709.72(A) (emphasis added). Plaintiffs' unsupported claim that the Ohio Legislature acted because OCLC improperly exercised "political clout in Ohio" is an unwarranted attack on the Ohio Legislature and its members. Surely, Plaintiffs are not suggesting that the judges in the Southern District of Ohio would be unable to adjudicate fairly a lawsuit brought by an out-of-state litigant, or that they would improperly favor OCLC. (Opp'n 13-14.)

Plaintiffs next argument, that "this Court, however, is not going to determine OCLC's state or federal tax-exempt status, nor would an Ohio court," and that, "OCLC [has not] explained why a federal court decision will affect only non-profits in Ohio," misses the point. (Opp'n 13.) First, if OCLC's non-profit status is irrelevant to the lawsuit, then Plaintiffs should not have

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE         - 11 -                    25955\2386813.1
Case No. 3:10-cv-03305-JSW

referenced its non-profit (or tax-exempt) status nearly twenty times in the Complaint or cited to the Ohio Supreme Court decision in their Opposition. (Compl. ¶¶ 4, 9, 13, 26, 31, 39, 46, 60, 62, 67-69, 71-74, 76, & 82; Opp'n at 13.) Second, OCLC's public purpose *is* relevant. OCLC, as a non-profit corporation whose mission extends beyond Plaintiffs' profit maximizing objectives, is entitled, as this case proceeds, to have the Court, "fully investigate the procompetitive and noneconomic justifications proffered" by OCLC for the design of its products and the manner in which they are sold. United States v. Brown Univ., 5 F.3d 658, 678 (1st Cir. 1993). Ohio courts are better equipped to assess OCLC's mission under Ohio non-profit law and OCLC's corporate governance documents than courts in other districts. The fact remains that because of Plaintiffs (unfounded) allegations that OCLC is abusing its non-profit status and improperly using its profits to engage in anticompetitive behavior, Ohio courts have a greater interest in adjudicating this lawsuit.

Finally, Plaintiffs fail to offer any evidence or authority in support of their contention that a court 2,000 miles away from OCLC would be more able to monitor an award of injunctive relief (which award OCLC vigorously disagrees is appropriate). Despite case law to the contrary cited in OCLC's Motion, Plaintiffs' only response is that this Court is "the appropriate court" to monitor injunctive relief. (Opp'n 14.) This alone is insufficient.

Because OCLC demonstrated that the State of Ohio has a much greater interest in this litigation, and California has only a slight interest, this factor supports transfer to the Southern District of Ohio.

### G. Plaintiffs Cannot Rebut OCLC's Argument That an Ohio Court Is Equally Familiar with the Applicable Law

It is not true, as Plaintiffs allege, that California courts are somehow more competent than Ohio courts in considering the issues presented in this lawsuit. As OCLC showed in its Motion, California antitrust laws are modeled directly after federal antitrust laws. See, e.g., Colonial Med. Group, Inc. v. Catholic Healthcare West, No. C-09-2192 MMC, 2010 WL 2108123, at *7 (N.D. Cal. May 25, 2010) ("The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act . . . was modeled after the Sherman Act.") (quoting

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE
Case No. 3:10-cv-03305-JSW

- 12 -

25955\2386813.1

County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1160 (9th Cir. 2001)) (internal citations omitted).   Indeed, California courts themselves have recognized that courts outside of California are competent and capable of applying these laws.  See, e.g., Strigliabotti v. Franklin Res., Inc., No. C 04-0883 SI, 2004 WL 2254556, at *5 (N.D. Cal. Oct 5, 2004) ("The Court finds that [the transferee] court is **fully capable of applying California law**.") (emphasis added). Plaintiffs suggest that because the Northern District of California receives more antitrust filings per year than does the Southern District of Ohio, that the Northern District somehow possess greater antitrust expertise.  (Opp'n 14.)  This should not weigh in favor of retaining venue in the Northern District of California.  This District receives more than twice as many annual filings as the Southern District, so the fact that this Court hears more antitrust cases is reflective, in part, of the relative difference in size between the two dockets.  Because Ohio and California courts are equally competent to apply federal law, and also to apply laws modeled after federal law, this factor is neutral.

### H. Plaintiffs Cannot Dispute That the Southern District of Ohio's Court Docket Is Less Congested

While Plaintiffs attempt to manipulate the statistics regarding case loads in the Southern District of Ohio and the Northern District of California by calculating "the average of the median times," it is undisputed that (1) the Southern District's docket has fewer cases; (2) the average number of cases per judge is lower in the Southern District; and (3) the Northern District has only a one month advantage in the time between filing and disposition.  (Mot. 14-15.)  The workload for judges in this Court is much higher than in Ohio, based on the actual statistics of the respective courts:  Northern District of California judges receive **100 more new civil filings per year** than judges in the Southern District of Ohio. (See http://www.uscourts.gov/cgi-bin/cmsd2009.pl.)  This factor plainly supports transfer to the Southern District of Ohio.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE                - 13 -                                      25955\2386813.1
Case No. 3:10-cv-03305-JSW

### III.  CONCLUSION

Based on the foregoing facts and law, the scales clearly tip in favor of transferring this matter to the Southern District of Ohio. The Court should therefore grant Defendant's Motion and transfer this action to the Southern District of Ohio, Eastern Division.

Dated: October 4, 2010                            Respectfully submitted

By: /s/ James A. Wilson
    James A. Wilson (*Pro hac vice*)
    Vorys, Sater, Seymour & Pease LLP

C. Brandon Wisoff (SBN 121930)
FARELLA BRAUN & MARTEL LLP

*Attorneys for Defendant OCLC ONLINE COMPUTER LIBRARY CENTER, INC.*

I, C. Brandon Wisoff, am the ECT user whose ID and password are being used to filed this Defendant's Reply in Further Support of Its Motion to Transfer Venue.

Dated: October 4, 2010.

/s/ C. Brandon Wisoff
C. Brandon Wisoff (SBN 121930)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO TRANSFER VENUE                - 14 -                25955\2386813.1
Case No. 3:10-cv-03305-JSW