IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYRIVER TECHNOLOGY SOLUTIONS, LLC and INNOVATIVE INTERFACES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OCLC ONLINE COMPUTER LIBRARY CENTER, INC., <br><br> Defendant. | No. C 10-03305 JSW <br><br><br><br> **ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE** |

Now before the Court is the motion filed by Defendant Online Computer Library Center ("OCLC") to transfer venue to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a) ("Section 1404"). The Court finds that this matter is suitable for disposition without oral argument and accordingly VACATES the hearing date of October 29, 2010. *See* N.D. Civ. L.R. 7-1(b). Having carefully considered the parties' papers and the relevant legal authority, the Court hereby GRANTS OCLC's motion to transfer venue.

**BACKGROUND**

On July 28, 2010, SkyRiver Technology Solutions, LLC ("SkyRiver") and Innovative Interfaces, Inc. ("Innovative") (collectively, "Plaintiffs") filed a complaint against OCLC for federal and state antitrust violations, and unfair competition. Plaintiffs seek injunctive relief, treble damages, attorneys' fees, and costs. SkyRiver and Innovative are California for-profit entities

United States District Court
For the Northern District of California

headquartered in Alameda County, California, located within this judicial district. (Complt. at ¶¶ 7, 8, 11.) OCLC is a nonprofit Ohio corporation that is headquartered in Dublin, Ohio, located within the Southern District of Ohio. (*Id.* at ¶ 9.) OCLC also has "an office in San Mateo, California, which engages in research, software devlopment, and customer support for products unrelated to the claims in this lawsuit." (Declaration of Bruce Crocco ("Crocco Decl.") at ¶ 12.) Plaintiffs and OCLC are in the business of providing information services to libraries, such as electronic cataloging. (*See id.* at ¶¶ 13-22.) In their complaint, Plaintiffs allege that OCLC has violated the Sherman Act by unlawfully entering exclusionary agreements, monopolizing, and entering unlawful tying arrangements. (*Id.* at ¶¶ 79-113.) Plaintiffs also allege that OCLC has violated California Business and Professions Code §§ 16720, 16726, and 17200 by engaging in anti-competitive behavior. (*Id.* at ¶¶ 114-132.)

**ANALYSIS**

**A.    Legal Standard for Motion to Transfer Venue.**

A district court has discretion "to adjudicate a motion for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In order for a district court to transfer an action under Section 1404, the court must make the following two findings: (1) that the transferee court is "one where the action might have been brought," and (2) "that the convenience of the parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotation marks omitted). There is no dispute that Plaintiffs could have brought this suit in the Southern District of Ohio. Accordingly, OCLC has met its burden on this prong. As the moving party, OCLC bears the burden of showing that the inconvenience of litigating in this forum favors transfer. *See, e.g.*, *E & J Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994).

To determine whether OCLC has met its burden on the convenience prong, the Court considers the following factors: (1) Plaintiffs' choice of forum; (2) convenience of the parties and witnesses; (3) ease of access to sources of proof; (4) local interest in the controversy; (5) familiarity of each forum with the applicable law; and (6) relative congestion in each forum. *See Gulf Oil Co.*

2

*v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  In addition to these convenience factors, the Court also considers whether transferring the action would serve the interests of justice.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991) (holding that the interests of justice "may be decisive in ruling on a transfer motion").

**B.     The Convenience Factors Weigh in Favor of Granting OCLC's Motion to Transfer.**

**1.     Plaintiffs' Choice of Forum is Entitled to Some Deference.**

Generally, unless a defendant can show that considerations of convenience clearly favor a different forum, a court should give deference to the plaintiff's choice of forum.  *See Decker Coal Co.*, 805 F.2d at 843.  However, a plaintiff's choice of forum is afforded less deference "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter."  *Pac. Car & Foundry v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).  The appropriate amount of deference is also affected by "the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action."  *Id.*

Here, this district has a "particular interest" in the parties and the subject matter because the Plaintiff corporations are citizens of this district.  *See Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (observing "the strong presumption in favor of a domestic plaintiff's forum choice").  Moreover, several facts relevant to this litigation occurred in this district.  As California entities headquartered in Alameda County, Plaintiffs have incurred injury in this district.  (*See, e.g.*, Compl. at ¶¶ 86-87, 94-95.)  Plaintiffs have also alleged that OCLC's anti-competitive practices were embodied in its arrangements with educational institutions located within this district.  For example, Plaintiffs assert in their complaint that OCLC uses its WorldCat Local program—which is used "as a comprehensive catalog for the ten library systems of the University of California"—to "refus[e] to deal with for-profit companies[] in its attempt to monopolize the ... market."  (*Id.* at ¶ 61.)  Accordingly, California has ties to the parties and factual background of the dispute.

Additionally, OCLC has several business connections with this district.  It has a small office

3

in San Mateo, California, and does business with several higher education institutions located in California. (*See* Crocco Decl. at ¶ 12; Compl. at ¶¶ 49-53, 61.) Because this district has a particular interest in this litigation and because some of the operative facts occurred within this district, deference to Plaintiffs' choice of forum is appropriate.[1] Therefore, this factor weighs against transfer.

### 2. OCLC Has Not Demonstrated that the Southern District of Ohio is a More Convenient Forum for Witnesses.

In addition to considering a plaintiff's choice of forum, courts take into account the relative convenience for all parties and witnesses. *See Decker Coal*, 805 F.2d at 843 (citing *Gulf Oil*, 330 U.S. at 508). As the moving party, OCLC "is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include." *Florens Containers v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002).

With respect to the convenience of parties, OCLC asserts that the Southern District of Ohio is more convenient because OCLC's corporate headquarters are within that district, and seven high-level executive OCLC employees who have knowledge or information regarding this matter reside within the district. (*See* Crocco Decl. at ¶¶ 13, 16-18.) OCLC argues that forcing these high-level employees to travel to California would "significantly impair OCLC's ability to run effectively." (Mot. at 8:16-23.) However, Plaintiffs have identified five California-domiciled executives of SkyRiver and Innovative that they intend to call as witnesses. (*See* Declaration of Leslie Straus ("Straus Decl.") at ¶ 2, Ex. A.) Accordingly, OCLC's argument is unpersuasive because transferring the case to the Southern District of Ohio would merely require Plaintiffs' executives to travel rather than OCLC executives. *See Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 541 (N.D. Cal. 2005) (citing *Van Dusen*, 376 U.S. at 616) ("[S]ection 1404 is not a mechanism by which to transfer

---

[1] Plaintiffs appear to argue that Congress intended to grant particularly substantial deference to their choice of forum due to their claims under the Sherman Act, which contains a broad venue provision. *See* 15 U.S.C. § 22. However, Section 1404 "applies to actions governed by special venue provisions," such as 15 U.S.C. § 22. *See Savage*, 611 F.2d at 279 (citing *Ex parte Collett*, 337 U.S. 55, 58-59 (1949)). Thus, even where a plaintiff brings its action in a proper venue, Section 1404(a) concerns a "separate and distinct problem[]." *Collett*, 337 U.S. at 60. The broad venue provision of 15 U.S.C. § 22 does not alter the Court's Section 1404 analysis, and Plaintiffs' choice of venue is not entitled to especially strong deference merely because Plaintiffs have alleged Sherman Act violations. *See United States v. Nat'l City Lines, Inc.*, 337 U.S. 78, 80-82 (1949).

4

inconvenience from one party to another."). Therefore, neither forum is more convenient for the parties themselves.

With respect to the convenience of witnesses, OCLC also argues that the Southern District of Ohio is most convenient. "The convenience of witnesses is often the most important factor in deciding whether to transfer an action." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1083 (N.D. Cal. 2008) (citing *Bunker v. Union Pac. R.R. Co.*, No. C 05-04059 JSW, 2006 WL 193856, at *2 (N.D. Cal. Jan. 23, 2006)). However, the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum. *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1998) (discounting the convenience to the defendant's employees because they could be compelled to testify).

Here, OCLC has identified several employee witnesses who would be inconvenienced by traveling to San Francisco, and Plaintiffs have identified several employee witnesses that would be inconvenienced by traveling to Ohio. (Crocco Decl. at ¶ 16; Straus Decl. at Ex. A.) To evaluate these competing witness lists, the Court must "examine[] the materiality and importance of the anticipated witnesses' testimony" rather than merely "focus[] on the number of witnesses in each location." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984). Plaintiffs allege that OCLC has engaged in unlawful anti-competitive business practices and arrangements. Therefore, the merit of Plaintiffs' allegations hinges on OCLC's conduct. Because OCLC's high-level employees have the greatest familiarity with OCLC's conduct and decision-making processes, testimony from those witnesses will be material and important. In contrast, testimony from the employee witnesses of SkyRiver and Innovative, although relevant, will be confined to the effects and harm caused by OCLC's policies. (*See* Straus Decl. at Ex. A.) Accordingly, the Court finds that the convenience of OCLC's employee witnesses is of greater importance than the convenience of Plaintiffs' employee witnesses. To the minimal extent that the convenience of party witnesses is relevant, this factor favors transfer.

Plaintiffs and OCLC have also identified several third-party witnesses that they intend to call. "Importantly, while the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Saleh v. Titan Corp.*, 361 F.

5

Supp. 2d 1152, 1160 (S.D. Cal. 2005) (quoting *Aquatic Amusement Assocs. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)) (internal quotation marks omitted).  OCLC has identified several third-party witnesses that it intends to call, all of whom reside within a few hundred miles of the Southern District of Ohio's courthouse in Columbus.  (Crocco Decl. at ¶ 19.)  Similarly, Plaintiffs have identified several third-party witnesses, most of whom reside much closer to San Francisco than to Columbus.  (Straus Decl. at Ex. A.)  As it did with the litigants' employee witnesses, the Court must "examine[] the materiality and importance of the anticipated witnesses' testimony" rather than focus on the sheer number of witnesses.  *See Gates Learjet*, 743 F.2d at 1335.

Here, the third-party witnesses that OCLC intends to call are representatives of libraries with which OCLC has done business.  (*See* Crocco Decl. at ¶ 19.)  This witness list includes representatives of the Michigan State University library, which, according to Plaintiffs' complaint, was a victim of OCLC's anti-competitive business practices.  (Compl. at ¶¶ 43-48.)  Plaintiffs' complaint alleges that OCLC coerced the libraries into entering exclusionary agreements and created unlawful tying arrangements with its products.  (*Id.* at ¶¶ 96-113.)  Therefore, the arrangements between OCLC and the libraries to which it provides services will be crucial to assess the validity of Plaintiffs' allegations.  Because the third-party witnesses OCLC intends to call are representatives of these libraries, the Court finds that their testimony is likely to be highly material.

Like OCLC, Plaintiffs intend to call non-party representatives of libraries that did business with OCLC.  Three of these witnesses are affiliated with Michigan State University; for these witnesses, the Southern District of Ohio is much closer than this district and presumably is a more convenient forum.  (Straus Decl. at Ex. A.)  The remainder of Plaintiffs' non-party witnesses are located in California and Arizona.  (*Id.*)  Although Plaintiffs intend to call witnesses located on the West Coast to testify regarding their rationale for switching to SkyRiver and the consequences of that switch, all but two of the libraries that have switched from OCLC to SkyRiver are closer to the Southern District of Ohio than they are to this district.  (*Id.*; Crocco. Decl. at ¶ 19.)  Therefore, the Southern District of Ohio is just as convenient as this district for Plaintiffs to present testimony from representatives of libraries that have switched to SkyRiver from OCLC.  Accordingly, the Court finds that the Southern District of Ohio is a more convenient forum for third-party witnesses.  This

6

factor weighs in favor of transfer.

### 3. The Southern District of Ohio Offers a More Convenient Forum for Accessing Sources of Proof.

Access to evidence is another factor that may favor transfer. *Decker Coal*, 805 F.2d at 843 (citing *Gilbert*, 330 U.S. at 508). OCLC's business records are stored either in electronic format or in hard copy in Dublin, Ohio, which is in the Southern District of Ohio. (Crocco Decl. at ¶¶ 15, 21, 22.) Plaintiffs' business records are stored in Emeryville, California, which is in this judicial district. (Declaration of James Hofbauer at ¶ 2; Straus Decl. at ¶ 2.) Notwithstanding the location of Plaintiffs' records, the location of OCLC's records suggests that the Southern District of Ohio is the epicenter of documentary evidence. This is because Plaintiffs' claims are based on OCLC's business practices, and documents pertaining to OCLC's business practices will be the focus of this litigation. While Plaintiffs argue that the location of OCLC's business records is irrelevant because they are stored electronically, Plaintiffs have failed to demonstrate that OCLC's records are stored primarily in electronic form. Moreover, even if the majority of OCLC's records are stored electronically, litigation expenses will still be minimized by adjudicating the action in the district where most of the documentary evidence is located.

Plaintiffs also argue that "there is substantial documentary evidence of third-party witnesses located in California," and that these documents indicate that venue is proper in this district. (Opp. Br. at 12:27-28.) However, Plaintiffs have provided very little information regarding the subject matter or quantity of these documents. Because the Court has before it only a vague description of these documents and cannot determine their significance, it affords the location of these documents little weight. Therefore, this factor weighs in favor of transfer.

### 4. Both California and Ohio Have an Interest in this Litigation.

The Ninth Circuit has directed courts to consider "the local interest in having localized controversies decided at home" when deciding whether a transfer of venue is appropriate. *Decker Coal*, 805 F.2d at 843 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) (internal quotation marks omitted). Plaintiffs are corporate citizens of California, which implicates California's strong public interest in deciding controversies involving its citizens. *See Lockman*

7

*Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991) (finding that California has an interest in having its citizens compensated for torts committed against them). On the other hand, OCLC is headquartered in Ohio and employs a substantial number of Ohio citizens. Therefore, both Ohio and California have substantial interests in this litigation. As such, this factor is neutral and does not tip the balance.

### 5. This District and the Southern District of Ohio are Both Familiar with the Applicable Law.

The Northern District of California and the Southern District of Ohio are equally familiar with Plaintiffs' Sherman Act claims. Plaintiffs suggest that this district is more familiar with antitrust law due to the greater number of antitrust filings in this district. However, this argument is legally untenable because all federal courts are capable of applying federal law. *See Allstar Mktg. Group, LLC v. Your Store Online, Inc.*, 666 F. Supp. 2d 1109, 1133 (C.D. Cal. 2009) (holding that federal districts are "equally capable of applying federal law"). Plaintiffs also contend that a California federal court will be more familiar with the law governing Plaintiffs' claims based on California law than will a federal court in Ohio. The Court, however, finds that the Southern District of Ohio is fully capable of adjudicating claims that arise under California law. Therefore, this factor is neutral.

### 6. This District and the Southern District of Ohio Have Similar Levels of Docket Congestion.

The relative docket congestion of the competing forums is also relevant to the Court's decision on whether to transfer. *See Decker Coal*, 805 F.2d at 843. This factor examines "whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet*, 743 F.2d at 1337. To measure congestion, courts compare the two fora's "median time from filing to disposition or trial." *Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d 1183-96 (S.D. Cal. 2007). In the Northern District of California, the average period between filing and disposition is 8.2 months, and the average period between filing and trial is 25.82 months. (Declaration of Mary Jo Shartsis, Ex. E.) In the Southern District of Ohio, the average period between filing and disposition is 11.25 months, and the average period between filing and trial is

29.23 months. (*Id.*) The Northern District of California, therefore, is slightly less congested based on these measurements. However, because the difference in congestion between the two forums is unremarkable, this factor is neutral and does not militate either for or against transfer.

As set forth in the analysis above, the only convenience factor that favors retaining venue in this district is deference to Plaintiffs' original choice of forum. On the other hand, OCLC has demonstrated that transferring this case to the Southern District of Ohio would further the convenience of witnesses (both employee and third-party), and would ease access to sources of proof. On balance, the Court finds that OCLC has demonstrated that the relevant convenience considerations weigh in favor of transfer.

**C.      Transferring This Action to the Southern District of Ohio Would Serve the Interests of Justice.**

"In determining whether to transfer a case ... the district court must determine whether the 'interests of justice' dictate such a transfer." *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977). The "interests of justice" refer to "those public-interest factors of systemic integrity and fairness." *Stewart*, 487 U.S. at 30. These interests include "whether efficient and expeditious administration of justice would be furthered." *Sherar*, 561 F.2d at 794.

The Court finds that litigating this case in the Southern District of Ohio would promote the efficient and expeditious administration of justice. Plaintiffs allege that OCLC "has obtained and is using its monopoly power ... by anticompetitive exclusive and exclusionary agreements and conduct." (Compl. at ¶ 31.) Most, if not all, of the OCLC executives responsible for promulgating and overseeing the conduct and agreements in question are headquartered in Ohio, and OCLC's business records (including the documents relating to agreements in question) are stored in Ohio. (*See* Crocco Decl. at ¶¶ 16, 21.) To prove their claims, therefore, it is almost certain that Plaintiffs will need to depose these executives[2] and access these documents. The Southern District of Ohio will be well-equipped efficiently and quickly to address any discovery-related issues that arise relating to persons and documents within its judicial district. Therefore, the Court finds that the

---

[2] This is made especially clear by the fact that Plaintiffs have listed many of these executives on their witness list. (*See* Straus Decl. at Ex. A.)

9

interests of justice weigh in favor of transfer.

## CONCLUSION

For the foregoing reasons, the Court GRANTS OCLC's motion to transfer the case to the United States District Court for the Southern District of Ohio. The clerk shall transfer the case forthwith.

**IT IS SO ORDERED.**

Dated: October 28, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE